Ex Parte Roger Davison, Petitioner.—13 S. W. (2d) 40.

Court en Banc, November 24, 1928.

*Wilder Lucas* for petitioner.

*Julius T. Muench, Oliver Senti* and *Richard S. Bull* for respondent

GENTRY, J.—The petitioner, Roger Davison, has made application to this court for a writ of habeas corpus, alleging that he is unlawfully deprived of his liberty by Anton Schuler, Sheriff of the City of St. Louis. By agreement of counsel, service of the writ was waived, as was also the body of the petitioner, and the sheriff promptly made return. There is no dispute about the facts: petitioner was arrested by one of the police officers of the city of St. Louis and an information filed against him in the Police Court No. 1 of that city, charging him with the violation of Sections 1665 and 1667 of Ordinance No. 36614 of said city. Petitioner was put upon trial in said police court, found guilty and fined. In due time petitioner appealed to the St. Louis Court of Criminal Correction, where he was again found guilty, his fine being assessed at one hundred dollars. Fail-

ing to pay such fine, petitioner (defendant therein) was committed to jail, which jail is under the control of the sheriff of said city.

Said sections of the ordinance are as follows:

"Sec. 1665. No stone quarry shall hereafter be opened, or brick kiln located or slaughter house, glue factory, vitriol factory, soap factory, candle factory, tannery, rendering factory, or garbage works established on any lot of ground or in any building within a distance of three hundred feet of any building, built and inhabited, or any building used as a place of public assemblage before the opening, locating, or establishing of any of the classes of business above mentioned.

"Sec. 1667. Any person, firm, or corporation violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and upon conviction shall be fined not less than twenty-five nor more than five hundred dollars. Each day such violation exists is hereby made a separate offense."

The information charges that, "In the city of St. Louis and State of Missouri, on the 29th day of June, 1928, the said Roger Davison did then and there open and operate a stone quarry within a distance of 300 feet of an inhabited building, to-wit, 'city blocks 5094-5095, located between Drury Lane and Wellington Court, Manhattan and Leamington Boulevards, within the limits of the city of St. Louis.' "

It is claimed by counsel for petitioner that said sections of the ordinance are in conflict with both Sections 4 and 30 of Article II of the Constitution of Missouri, and also with the Fourteenth Amendment of the Constitution of the United States. On the other hand, counsel for the sheriff, who also represent the city of St. Louis, take the position that the above sections of the ordinance are not in violation of any constitutional provision, but that the same constitute a reasonable exercise of the police power of the city. The well prepared briefs of counsel on both sides have made our labors lighter as the questions for decision are specifically pointed out.

I. In this day of greatly increased population of cities and towns, the legislative body of such municipality has the power to make necessary and reasonable regulations regarding the use of the property therein. Often it has been held that such regulation does not deprive the citizen of the use of his property, but simply prohibits him from the use thereof for purposes deemed objectionable. *Sic utere tuo, ut alienum non loedas.* Citations in support of this proposition are unnecessary, it being a fundamental rule of law.

II. It is true that the necessity, the reasonableness and the wisdom of an ordinance are matters to be decided by the legislative body of a municipality, yet courts have supervisory power to examine the ordinance and pass on such questions. [City of Carthage v. Block, 139 Mo. App. l. c. 391; Baker v. Hasler, 218 Mo. App. l. c. 7; St. Louis v. St. Louis Theatre Co., 202 Mo. l. c. 699; Cooley on Const. Lim. (7 Ed.) 280; Beach on Pub. Corp., sec. 512.] And the question may be raised and determined by habeas corpus. [Church on Habeas Corpus, sec. 352.]

III. The owner of property has the right to use the same in any manner he may see fit consistent with the rights of others. Hence, the prohibiting by ordinance of the use to which the owner may make of private property is taking said property within the meaning of the Constitution. In his work on Limitation of Police Powers, Professor Tiedeman uses this language: "The constitutional guaranty of protection for all private property extends equally to the enjoyment and the possession of lands. An arbitrary interference by the government, or by its authority, with the reasonable enjoyment of private lands is a taking of private property without due process of law, which is inhibited by the Constitution." [Tiedeman's Limitation of Police Powers, sec. 122.]

IV. The question in the instant case is, has the city the right to prohibit the use of property for a purpose which is not a nuisance *per se* and not injurious to the health, morals or safety of the community? It cannot be argued that a stone quarry belongs to the same class as a brick kiln, slaughter house, glue factory, soap factory, tannery, rendering factory, or garbage works. It is a fact well known, and courts will take judicial notice thereof, that in the operation of a brick kiln fires are used and large quantities of smoke discharged through the chimneys; and in the other businesses mentioned objectionable fumes are emitted. The city's legislative body no doubt ascertained that the operation of such establishments within three hundred feet of a residence or building used as a place of public assemblage would be injurious to the health as well as offensive and injurious to the occupants thereof. In determining this case, it is not necessary for us to consider the reasonableness of the ordinance prohibiting such occupations within such territory. But the sole question we are called upon to decide is the reasonableness and the constitutionality of that part of the ordinance which prohibits the opening of a stone quarry within such prohibited territory. There is much authority in support of the proposition that a city may prohibit from certain territory soap fac-

tories, slaughter houses, livery stables and other business, the operation of which necessarily result in injury to the health, safety and welfare of the inhabitants of such territory. [Tiedeman on Limitation of Police Powers, sec. 104; Reinman v. Little Rock, 237 U. S. 171; 2 Dillon, Munic. Corp., secs. 690-692; 2 Kent's Com., p. 340.]

In speaking of a stone quarry this court said; "We do not have to go to the books to ascertain that it is not a nuisance *per se.*" [St. Louis v. Construction Co., 244 Mo. l. c. 485.] We know of no injury that would result to anyone by reason of the opening up of a stone quarry, unless such operation was accompanied by blasting. Of course, the use of explosives in a stone quarry might result, as it often has resulted, in the breaking of glass and plaster, the cracking of walls and other injury to houses, as well as injury to persons; and the noise incident to such explosions interferes with the enjoyment of private homes as well as schools and churches. The ordinance does not prohibit the use of explosives in the operation of a stone quarry, but prohibits the opening up of the stone quarry altogether within such territory. It is a fact well known that a stone quarry may be opened up and operated without the use of explosives, in which event no injury to individuals or to property would result. The information filed against petitioner does not charge him with the use of explosives in the operation of the stone quarry, but simply charges that he opened and operated a stone quarry, following the language of the ordinance.

In deciding a case where a city ordinance prohibited any person from making excavation in the city for the purpose of removing from his premises any dirt, gravel or other natural substance in the soil, the Texas Court of Appeals said that such ordinance was unconstitutional, as the excavation, removal and sale of gravel by the operation of a gravel pit would not be necessarily or even probably injurious to the health, safety or welfare of the inhabitants. The court further said: "We do not see how said gravel pit, properly operated, can be held a nuisance in itself, or likely to injuriously affect the public in any manner within the authority of the city in the exercise of its police power to regulate or prohibit. It is true it might be so operated as to render it a nuisance. For instance, excavation might be made so near the public streets, alleys, or passways of the city as to endanger the public in traveling to and fro thereon; explosives might be so used in dislodging and excavating the gravel as to endanger persons or property in the vicinity of such operations; water might be allowed to accumulate and stand in the holes left by such excavation and removal of gravel. None of the same, however, are necessarily incident to such operation." [Stone v. Kendall, 268 S, W. l. c. 761.]

And in a case where a city ordinance prohibited any person from maintaining or operating a stone quarry within a certain portion of the city, the Supreme Court of California held such ordinance unconstitutional, and in a habeas corpus proceeding discharged the defendant. The court used this language: "The effect of the ordinance absolutely prohibiting the maintenance or operation of a rock or stone quarry within certain designated limits of the city and county of San Francisco is to absolutely deprive the owners of real property within such limits of a valuable right incident to their ownership, viz., the right to extract therefrom such rock and stone as they may find it to their advantage to dispose of. While the use to which a man may put his property may be restricted or regulated by the State, in the exercise of its police power, so far as may be necessary to protect others from injury from such use, it is of course elementary that the enjoyment of one's property cannot be interfered with or limited arbitrarily." [In re Kelso, 147 Cal. l. c. 611.]

Counsel for the city, in their brief, say: "It is well known that stagnant waters, breeding insects and germs, usually accumulate in the excavations caused by such an operation. These are the ordinary incidents of the activities here prohibited, which we must consider were contemplated by the legislative authority."

It may be said that the erection of any building in the city might be delayed for some time and that stagnant waters, breeding insects and germs, would accumulate in the excavations necessary for such building. As a matter of fact, this sometimes occurs; yet, it cannot be argued that the city could prohibit the erection of buildings simply because the excavations necessary in connection therewith might result in the accumulation of stagnant waters with the accompanying evil attendants. It must not be presumed that the petitioner would open up this stone quarry in any such manner. If he did, no doubt the city has other ordinances, or will enact suitable ordinances applicable to such condition, if such a condition shall exist. A city cannot prohibit the use by the owner of his property simply because in the use thereof he might do something that would be injurious to others.

We therefore hold that Section 1665 of the ordinance, prohibiting the opening up of a stone quarry within a distance of three hundred feet of any building built and inhabited or used as a place of public assemblage, is unconstitutional, which entitles the petitioner to his discharge.

It is ordered that the petitioner be discharged. All concur, except *Ragland, J.*, who dissents.