**Richard C. PEARCE, Relator-Appellant,**

**v.**

**J. J. LORSON, Chairman, R. G. Greise, William Maier, T. Czarnecki and E. Eikermann, in their capacity as members of the Board of Adjustment of the City of Flordell Hills, and the Board of Adjustment of Flordell Hills, Respondents,**

**and**

**Herman Nieland and Della Nieland, Intervenors.**

**No. 31719.**

St. Louis Court of Appeals.

Missouri.

July 20, 1965.

Rehearing Denied Sept. 8, 1965.

Paul Simon, Floyd McBride, Thomas F. McGuire, St. Louis, for relator-appellant.

John J. Shanahan, St. Louis, for respondents.

Husch, Eppenberger, Donohue, Elson & Cornfeld, Shulamith Simon, St. Louis, for intervenors.

WOLFE, Acting Presiding Judge.

This matter originated before the Board of Adjustment of the City of Flordell Hills. The Building Commissioner of the city had issued an occupancy permit to Richard C. Pearce, a chiropodist, for the occupancy and use of a building as a doctor's office. Mr. and Mrs. Herman Nieland had requested the Building Commissioner to revoke the permit, and upon his refusal to do so they filed an appeal with the Board of Adjustment of the City of Flordell Hills. A hearing was held on the appeal, and the Board revoked the permit. Pearce then brought an action by way of certiorari in the Circuit Court of St. Louis County, in an effort to reverse the order of the Board of Adjustment. The Circuit Court affirmed the order of the Board, and Pearce prosecutes this appeal.

The property in question is a five-room brick house built for residential occupancy. It is located at 7051 West Florissant Avenue. This is a residential area zoned as Class B, which is for single family dwellings. On April 12, 1957, the zoning of this district was changed so as to permit it

to be used, not only as a single family dwelling area but also permitted medical offices and clinics. This remained in effect until March 10, 1961, when an ordinance was passed again limiting the area to single family dwellings, and specifically prohibiting medical offices and clinics.

Herman Nieland and his wife lived at 7055 West Florissant Avenue. This house is next door to 7051, the property here under consideration. They had lived there since 1942. During that time the house at 7051 had only been used as a single family residence. In January, 1961, they noticed that a sign had been placed on the front lawn of the house next door, offering it for sale "For Doctor's or Medical Clinic". Mr. Nieland then got in touch with one of the Aldermen and found out, for the first time, that the property was then zoned so that a doctor's office or clinic could be established. Mr. and Mrs. Nieland and others met with the Board of Aldermen and presented a petition for a change in the zoning law, so that the area would be in Class A, which would restrict it solely to single family residences. Such an ordinance was passed by the Board and signed by the Mayor at 10:30 P.M. on March 10, 1961.

On March 1, 1961, Richard C. Pearce, the chiropodist and Relator-Appellant herein, entered into an earnest money contract to purchase the property at 7051 for the sum of $17,250. On the 7th of March he applied for and received an occupancy permit to use and occupy the building as a doctor's office. On the 10th day of March, 1961, the same day that the ordinance rezoning the property was enacted, the sale was consummated.

On March 10, Mr. and Mrs. Nieland requested the Building Commissioner to revoke the occupancy permit that he had issued on March 7. He refused to do so, and on April 14, the Nielands appealed to the Board of Adjustment of the City of Flordell Hills. On April 27 the appeal was heard. As a defense to the action Pearce set up a claim that he occupied the building as a doctor's office prior to the ordinance of March 10 and thereby established a non-conforming use of which he could not be divested.

Mr. and Mrs. Nieland testified before the Board of Adjustment to the facts as set out above and they also testified that the house in question was not occupied by Pearce until the last of March or the first part of April. Mrs. Nieland testified that the house was without water or heat until the last of March and at that time furniture and equipment was moved in.

Pearce testified to the facts above stated in relation to the purchase of the property. As to the time he occupied the place as an office for the practice of chiropody he stated that at the date of purchase he maintained an office at 7120 West Florissant Avenue. He continued his practice from 7120 West Florissant Avenue until the end of March. He stated that on the First of March he put a sign in the window at 7051 which read "Dr. R. C. Pearce, Chiropodist, Foot Specialist" and moved in a treatment chair and some supplies. A friend, who helped him move in the chair, said some supplies were there. There were no other chairs or seats for patients.

Pearce testified that a patient named Ganninger phoned for an appointment on March 10 and he directed him to come to 7051 West Florissant. He arrived there about 8:45 P.M. and Pearce treated his feet. Pearce also said, that a man who came to the place to figure on some alterations, talked to him about "fatigue". He billed Ganninger for his services, but he did not bill the other person mentioned. There was testimony that the house was worth $1,750 to $2,250 more as an office building than as a dwelling.

Upon the foregoing evidence the Board of Adjustment found that Pearce had not established a non-conforming use and revoked the occupancy permit. As stated, this action was brought by Pearce to review and reverse the ruling of the Board of Adjust-

ment but the Circuit Court affirmed the Board's ruling and Pearce prosecutes this appeal.

■ It is here contended that the trial Court erred in affirming the ruling of the Board of Adjustment in "that the undisputed evidence" showed that Pearce had established a non-conforming use prior to the passage of the ordinance. The scope of judicial review of orders of the Board of Adjustment, both in the Circuit Court and here, is limited to the determination of whether or not, in the proceedings before the Board, there was competent and substantial evidence to support the findings of the Board. Veal v. Leimkuehler, Mo.App., 249 S.W.2d 491, Cunningham v. Leimkuehler, Mo.App., 276 S.W.2d 633, Beckmeyer v. Beuc, Mo.App., 367 S.W.2d 9. With this rule of review before us we find that the Circuit Court properly affirmed the finding of the Board. The only evidence which the Board had that related to any nonconforming use was the fact that Pearce had directed a patient to come to the house instead of his regular office and about an hour before the ordinance was passed treated the patient there. Pearce had also put a sign in the window and had moved in a chair. This did not establish a use but appeared to be nothing more than a sham effort to do so. Veal v. Leimkuehler, supra, State v. Wind, Mo.App., 309 S.W.2d 663.

■ It was also asserted here that Pearce had a vested right by reason of the fact that he had purchased the house and obtained an occupancy permit prior to the time that the ordinance was passed. The question of a vested right to the use of property has been exhaustively considered in a recent opinion by the Missouri Supreme Court, Hoffmann v. Kinealy, Mo., 389 S.W.2d 745. Therein the Court was dealing with the amortization provision of an ordinance relating to non-conforming uses and it held the amortization provision unconstitutional because there was a vested right in the property owner by reason of

an established non-conforming use. It appears quite obvious that a vested right to a non-conforming use cannot exist unless the non-conforming use is first established. The granting of the permit did not give Pearce any vested right. State ex rel. Oliver Cadillac Co. v. Christopher, 317 Mo. 1179, 298 S.W. 720. Veal v. Leimkuehler, supra.

■ In the Circuit Court appellant, Pearce, amended his petition for review by asserting that it had come to his attention after the hearing before the Board that William C. Maier, one of the five members of the Board of Adjustment, was biased and prejudiced against Pearce. The only evidence introduced to support this was the deposition of Mr. Maier. The deposition disclosed that he was 27 years of age, lived with his parents on Manette Drive in Flordell Hills. This was not in the area here under consideration and Maier owned no property in the area. In February, 1961, he held no office in the City of Flordell Hills. He was asked by a friend to attend a meeting of the Board of Aldermen. He thought when he went to the meeting that the property here under consideration was zoned exclusively for dwelling purposes and that the Board was considering re-zoning it. When he arrived at the meeting there were about 25 persons present arguing about the house at 7051 W. Florissant being advertised for sale as a medical office. The City Attorney explained to them that no change in the zoning had taken place and if those present wanted the area for residential use exclusively they should petition the Board of Aldermen to pass a new zoning law.

The City Attorney asked Maier to draw up a petition for those present and Maier did so and signed it himself. He knew that a new ordinance would not eliminate any established nonconforming use. On April 14 the Mayor of Flordell Hills called him and told him that there was a vacancy on the Board of Adjustment and asked him if he would serve. He agreed to and sat as a

member of the Board when it heard the appeal to revoke Pearce's occupancy permit.

The appellant cites us to Weston Benefit Assessment, etc., Mo.App., 294 S.W.2d 353, as authority for his contention that Maier was disqualified as a matter of law from sitting as a member of the Board. In the Weston Benefit Assessment case a county judge signed a petition to dis-incorporate a road district in which he owned real estate. The petition was to the County Court of which he was a member, and refusing to disqualify himself, he sat with the Court and voted in favor of the petition of which he was a signer. We have no such situation here. Maier had nothing more than a civic interest in seeking the ordinance change. He had no official part in changing it and the only question before the Board of Adjustment on which he sat was whether or not a non-conforming use had been established. There is no evidence that his interest was such that he could not pass upon that question without bias.

From all the foregoing we conclude that the Circuit Court properly affirmed the ruling of the Board of Adjustment and the judgment of the Circuit Court is affirmed.

ANDERSON, J., and L. F. COTTEY, Special Judge, concur.

RUDDY, J., not participating.