PEOPLE TAGS, INC., et al., Plaintiffs,

v.

JACKSON COUNTY LEGISLATURE, et al., Defendants.

No. 85–0028–CV–W–9.

United States District Court, W.D. Missouri, W.D.

June 3, 1986.

**1347**

Errol Copilevitz, John P. Jennings, Jr., Harding & Copilevitz, Kansas City, Mo., for plaintiffs.

Russell D. Jacobson, Gary Owens, John B. Williams Office of the County Counselor, Kansas City, Mo., for defendants.

ORDER DECLARING CERTAIN JACKSON COUNTY ORDINANCES UNCONSTITUTIONAL AS APPLIED TO PLAINTIFFS AND ENJOINING THEIR ENFORCEMENT

BARTLETT, District Judge.

Plaintiffs People Tags, Inc., Donald W. DeLap and Dale F. Studdard claim that Jackson County, Missouri, Ordinances No. 1243 and No. 1251 violate various federal and state constitutional provisions. Plaintiffs seek an injunction against defendants William F. Waris, County Executive of Jackson County, Missouri, the Jackson County Legislature, the members of the Jackson County Legislature in their official capacities and Robert J. Rennau, Sheriff of Jackson County, prohibiting them from enforcing Ordinances No. 1243 and No. 1251.

The parties have filed cross motions for summary judgment based on a stipulated factual record.[1] A hearing was held on December 18, 1985, at which the parties were given an opportunity to present their legal arguments on the issues.

## UNDISPUTED FACTS

People Tags, Inc. (People Tags) is a Missouri corporation that leases property at 8801 Truman Road in the Blue Summit area of unincorporated Jackson County, Missouri. On August 30, 1984, People Tags applied for and received a Jackson County Amusement License. On September 5, 1984, People Tags opened an adult bookstore, adult motion picture theater and adult mini motion picture theater called Truman Road News at 8801 Truman Road. Truman Road News is located within 1,500 feet of a church. Plaintiff Donald W. DeLap is the manager of Truman Road News. Plaintiff Dale F. Studdard, a resident of Jackson County, wants to purchase adult oriented materials from Truman Road News.

Jackson County, Missouri, is a first class charter county operating pursuant to the Missouri Constitution, art. VI, § 18, and pursuant to its Constitutional Home Rule Charter that was approved by the voters on November 3, 1970. Defendant Jackson County Legislature is empowered by law to enact the ordinances at issue in this case. Defendants David L. Young, J.W. Patterson, Archie McGee, Fred Arbanas, Henry Rizzo, Fred J. Sanchez, Ed Growney, James D. Tindall, Harold L. Holliday, Jr., John E. Redmond, Robert E. Watson, Robert Beaird, Richard F. Schmidt, Dr. Robert E. Hertzog and Bill Randall Williams were authorized by law, as members of the Jackson County Legislature at the time that Ordinances No. 1243 and No. 1251 were enacted, to vote for or against these ordinances.

Defendant Robert J. Renneau, the Sheriff of Jackson County, was empowered to issue citations for violations of county ordinances, including the ordinances at issue.

---

1. On January 9, 1985, plaintiffs filed a motion for a temporary restraining order and preliminary injunction. On January 29, 1985, defendants filed a motion to dismiss plaintiffs' complaint. On November 22, 1985, the parties filed cross motions for summary judgment. Pursuant to the agreement between the parties as set forth in a letter to the Court dated October 3, 1985, plaintiff has withdrawn its motion for a temporary restraining order and a preliminary injunction and the issues raised in defendants' motion to dismiss are to be considered in ruling on the parties' cross-motions for summary judgment.

On September 10, 1984, the Jackson County Legislature passed Ordinance No. 1243, consisting of definitions and the following substantive provisions in Section 24090.32:

a. In no event shall any adult bookstore, adult motion picture theater, or adult mini motion picture theater be located within 1500 feet of any church or school.

b. All adult bookstores, adult motion picture theaters, and adult mini motion picture theaters in existence and operating as of the effective date of this ordinance, shall be brought into compliance with Section 24090.32.a above within 120 days of passage of that section. The 120 day time period shall be construed as amortization of nonconforming uses and shall supersede section 24215.00 of the Jackson County Code as it would pertain to adult bookstores, adult motion picture theaters, and adult mini motion picture theaters.

On the same day that Ordinance No. 1243 was passed by the County Legislature, the Land Use Committee of the Jackson County Legislature held a public hearing on the proposed ordinance. On the next day, September 11, 1984, Jackson County Executive Bill Waris signed Ordinance No. 1243 into law. Ordinance No. 1243 became enforceable against People Tags on January 11, 1985, after the expiration of the 120 day period for "amortization of nonconforming uses."

On October 1, 1984, the Jackson County Legislature passed Ordinance No. 1251, consisting of several "whereas" clauses, definitions and the following substantive provisions in Section 2:

a. In no event shall any adult bookstore, adult motion picture theater, or adult mini motion picture theater be located within 1500 feet of the property line of any church or school, as defined in Section 1 paragraph F. and Section 1 paragraph G.

b. All adult bookstores, adult motion picture theaters, and adult mini motion picture theaters in existence and operat-

ing as of the effective date of this ordinance, shall be brought into compliance with Section Two within 120 days of passage of that section.

Prior to the adoption of Ordinance No. 1251, public hearings were held by the Land Use Committee of the Jackson County Legislature (October 1, 1984) and the Jackson County Plan Commission (September 27, 1984). Jackson County Executive Bill Waris signed Ordinance No. 1251 into law on October 3, 1984. Ordinance No. 1251 became enforceable against People Tags on February 3, 1985, after the expiration of the 120 day period.

By letter dated October 10, 1984, to the county counselor of Jackson County, counsel for plaintiffs inquired whether the county intended to enforce Ordinances No. 1243 and No. 1251 against plaintiff People Tags. By letter dated October 25, 1984, the county counselor replied that the county could "legally force the 8801 Truman Road business to comply with the '1500 feet' regulation within 120 days of the passage of either ordinance."

## STANDING

Defendants argue that People Tags lacks standing to bring this suit because its corporate charter was forfeited on November 1, 1983, for failure to pay its state franchise tax. Defendants attached the affidavit of Gary Owens and a certificate from Missouri Secretary of State stating that People Tags' corporate charter was forfeited on November 1, 1983, and that the forfeiture had not been rescinded as of April 9, 1985.

In response, People Tags filed a Certificate of Rescission of Forfeiture issued by the Missouri Secretary of State stating that People Tags was restored to good standing on April 26, 1985.

Because plaintiff People Tags is now a corporation in good standing, defendants' motion for summary judgment based on People Tags' lack of standing will be denied.

Also, defendants argue that plaintiff Dale F. Studdard lacks standing to challenge the validity of Ordinances No. 1243 and No. 1251. Plaintiffs People Tags, DeLap and Studdard seek the same relief, i.e., declaratory and injunctive relief. Defendants do not dispute that plaintiffs People Tags, Inc. and Donald W. DeLap have standing to challenge the validity of Ordinances No. 1243 and No. 1251. Because plaintiff Studdard requests the same relief requested by People Tags and DeLap, it is unnecessary to determine whether plaintiff Studdard has standing to challenge the validity of the ordinances.

## ABSTENTION

Defendants argue that under *Railroad Com'n. of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), this Court should abstain from deciding this case.

This Court should abstain from deciding cases within its jurisdiction only if exceptional circumstances exist.

The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

*County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). The district court should not abstain merely because a state court could entertain the issues. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813–14, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Abstention from the exercise of federal jurisdiction should be limited to cases where there is an overriding state interest. *Id.*

### Pullman Abstention

■ In *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 563 (6th Cir.1982), the Court described *Pullman* abstention as follows:

Under the *Pullman* doctrine, where a state law is being challenged in federal court as contrary to the federal Constitution and there are questions of state law which may be dispositive of the case, a federal court should abstain from deciding the case and allow the state courts to decide the state issues. *Pullman* abstention is appropriate in a case where the challenged state statute is susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching the federal constitutional question. *Babbitt v. United Farm Workers*, 442 U.S. 289, 306, 99 S.Ct. 2301, 2312, 60 L.Ed.2d 895 (1979), citing *Kusper v. Pontikes*, 414 U.S. 51, 54, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973). *Pullman* abstention is not appropriate, however, where it is clear that the statute is unconstitutional no matter how it may be construed by the state courts. *See Kusper, supra; Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

Here, the ordinances are not susceptible to a construction by Missouri courts that would alter the conclusion that they are unconstitutional as applied to Truman Road News. Furthermore, *Pullman* abstention is inappropriate in cases challenging the validity of statutes for allegedly violating free speech rights guaranteed by the First Amendment. *Zwickler v. Koota*, 389 U.S. 241, 254, 88 S.Ct. 391, 399, 19 L.Ed.2d 444 (1967). Here the plaintiffs assert that the ordinances violate the First Amendment. Therefore, abstention under *Pullman* would not be appropriate.

### Burford Abstention

■ Defendants argue that abstention is appropriate under *Burford* because federal review of the questions presented in this case would be disruptive of state efforts to

establish a coherent policy about a matter of substantial public concern. In *Burford,* the plaintiffs challenged the issuance by the Texas Railroad Commission of a permit to drill oil wells. The Supreme Court ruled that the federal court case should have been dismissed because the questions presented required the interpretation of a comprehensive state regulatory scheme. *Burford,* 319 U.S. at 320, 332, 63 S.Ct. at 1100, 1106–07.

In *Colorado River,* the Supreme Court stated that abstention under *Burford* is appropriate "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244. The Court should abstain under *Burford* if resolution of state claims would have an impermissibly disruptive effect on state policy. *Id.* at 815, 96 S.Ct. at 1245. However, abstention is not appropriate if the state law is settled and resolution of the state claims will not impair efforts to implement state policy.

> The present case clearly does not fall within [Burford] abstention. While state claims are involved in the case, the state law to be applied appears to be settled. No questions bearing on state policy are presented for decision. Nor will decision of the state claims impair efforts to implement state policy as in *Burford.* To be sure, the federal claims that are involved in the case go to the establishment of water rights which may conflict with similar rights based on state law. But the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction.

*Id.* at 815–16, 96 S.Ct. at 1245.

■ Here, questions of state law bearing on state policy are presented for decision.

These ordinances are not part of a comprehensive statewide regulatory scheme of the type involved in *Burford.* Furthermore, the state law on nonconforming uses and amortization is settled. To be sure, the policy of Jackson County may be affected by the federal constitutional implications of the regulatory scheme embodied in these ordinances, but such a conflict between the federal constitution and local ordinances does not warrant staying the exercise of federal jurisdiction.

### PENDENT JURISDICTION

■ Defendants assert that this Court should not exercise pendent jurisdiction over plaintiff's state law claims that: 1) the Jackson County Legislature did not comply with state and county procedural requirements in enacting Ordinances No. 1243 and No. 1251;[2] and 2) the ordinances violate the Missouri constitutional prohibition against taking property without just compensation.

Pendent jurisdiction should be exercised only when a) the Court has the "power" to hear the claim; and b) it is appropriate, under the circumstances of the case, for the Court to exercise its discretion to consider the pendent claims.

Pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *," U.S. Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062.

**2.** Plaintiffs assert that the Jackson County Legislature failed to follow the statutory procedures required by Mo.Rev.Stat. § 64.231 and Jackson County Zoning Ordinance No. 1243. Even if the Jackson County Legislature failed to follow the required procedures in enacting Ordinance No. 1243, plaintiffs do not claim that the required procedures were not followed in enacting Ordinance No. 1251. Because the ordinances are substantially similar, it is unnecessary to determine whether the Jackson County Legislature failed to follow the required procedures in passing Ordinance No. 1243.

The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

*United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) [emphasis in original] [footnotes omitted].

Here, the Court has the power to entertain plaintiffs' state claims because the state and federal claims derive from a common nucleus of operative fact. The same ordinances that are said to have been enacted in violation of state and county procedural requirements and in violation of the Missouri Constitution are challenged as violating the federal constitution.

Whether pendent jurisdiction should be exercised is a matter of discretion, not of plaintiffs' right. *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. Because the challenges under state law are an integral part of the controversy producing the federal constitutional issues, the efficient administration of judicial resources strongly suggests consideration of all issues in this proceeding.

## FEDERAL CONSTITUTIONAL ISSUES

*Ordinances No. 1243 and No. 1251 are Content-Based Regulations in Violation of the First and Fourteenth Amendments*

■ Plaintiffs assert that Ordinances No. 1243 and No. 1251 violate the First Amendment to the United States Constitution[3] and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because they attempt to regulate the content of protected speech. Defendants respond that Ordinances No. 1243 and No. 1251 are not content-based regulations but are reasonable regulations

of the time, place and manner of protected speech of the type approved by the Supreme Court in *City of Renton v. Playtime Theatres, Inc.,* —— U.S. ——, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) and *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1979).

"The power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities. But the zoning power is not infinite and unchallengeable; it 'must be exercised within constitutional limits.'" *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981). Where protected First Amendment interests are at stake, zoning regulations have no "talismanic immunity from constitutional challenge." *American Mini Theatres,* 427 U.S. at 75, 96 S.Ct. at 2454–55 (Powell, J., concurring).

"[T]he presumption of validity that traditionally attends a local government's exercise of its zoning powers carries little, if any, weight where the zoning regulation trenches on rights of expression protected under the First Amendment." *Schad,* 452 U.S. at 77, 101 S.Ct. at 2187 (Blackmun, J., concurring).

In *American Mini Theatres,* 427 U.S. at 72–73, 96 S.Ct. at 2453 (plurality opinion of Stevens, J., joined by Burger, C.J., and White and Rehnquist, JJ.), and 427 U.S. at 84, 96 S.Ct. at 2459 (Powell, J., concurring), the Supreme Court determined that a Detroit zoning ordinance requiring adult movie theaters to be more than 1,000 feet from other adult movie theaters and more than 500 feet from a residential area was a reasonable time, place and manner of regulation of protected speech.

Reasonable regulations of the time, place, and manner of protected speech, where those regulations are necessary to further significant governmental inter-

**3.** The First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law ... abridging the freedom of speech, or of the press...." This amendment is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Edwards v. South Carolina,* 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963).

ets, are permitted by the First Amendment.

*Id.* at 64 n. 18, 96 S.Ct. at 2449 n. 18.

The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances.

.    .    .    .    .

[W]e are also persuaded that the 1000 foot restriction does not, in itself, create an impermissible restraint on protected communication. The city's interest in planning and regulating the use of property for commercial purposes is clearly adequate to support that kind of restriction applicable to all theaters within the city limits. In short ... the regulation of the place where such films may be exhibited does not offend the First Amendment.

*Id.* at 62–64, 96 S.Ct. at 2448–49.

In addition, even though adult theaters were treated differently from other theaters based on the content of material shown in the respective theaters, the zoning ordinance in *American Mini Theatres* did not violate the Equal Protection Clause of the Fourteenth Amendment.

Even though the First Amendment protects communication in this area from total suppression, we hold that the State may legitimately use the content of these materials as the basis for placing them in a different classification from other motion pictures.

The remaining question is whether the line drawn by these ordinances is justified by the city's interest in preserving the character of its neighborhoods. On this question we agree with the views expressed by District Judges Kennedy and Gubow. The record disclosed a factual basis for the Common Council's conclusion that this kind of restriction will have the desired effect. It is not our function to appraise the wisdom of its decision to require adult theaters to be separated rather than concentrated in the same areas. In either event, the city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect. Moreover, the city must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems.

Since what is ultimately at stake is nothing more than a limitation on the place where adult films may be exhibited, even though the determination of whether a particular film fits that characterization turns on the nature of its content, we conclude that the city's interest in the present and future character of its neighborhoods adequately supports its classification of motion pictures. We hold that the zoning ordinances requiring that adult motion picture theaters not be located within 1,000 feet of two other regulated uses does not violate the Equal Protection Clause of the Fourteenth Amendment.

*Id.* at 70–73, 96 S.Ct. at 2452–53. (plurality opinion of Stevens, J., joined by Burger, C.J., and White and Rehnquist, JJ.).

The Jackson County zoning ordinances are similar to the zoning ordinance in *American Mini Theatres* with this exception: The Jackson County ordinances as applied to plaintiffs would close an existing business.[4] The zoning ordinance in *Ameri-*

---

4. Both ordinances contain provisions that would force the closing of Truman Road News by requiring compliance with the statute within 120 days of the date of enactment.

Ordinance No. 1243 provides:

All adult bookstores, adult motion picture theaters, and adult mini-motion picture theaters in existence and operating as of the effective date of this ordinance, shall be brought into compliance with Section 24090.32.a above within 120 days of passage of that section. The 120 day time period shall be construed as amortization of nonconforming uses and shall supersede section 24215.00 of the Jackson County Code as it would pertain to adult bookstores, adult motion picture theaters, and adult mini motion picture theaters.

Ordinance No. 1251 provides:

All adult bookstores, adult motion picture theaters, and adult mini motion picture theaters in existence and operating as of the effective date of this ordinance, shall be brought into compliance with Section Two within 120 days of passage of that section.

can *Mini Theatres* applied prospectively only and prescribed where adult theaters could be opened; it did not prohibit the operation of adult movie theaters throughout the city, and it did not force existing adult movie theaters to close.

The ordinances are not challenged on the ground that they impose a limit on the total number of adult theaters which may operate in the city of Detroit. There is no claim that distributors or exhibitors of adult films are denied access to the market or, conversely, that the viewing public is unable to satisfy its appetite for sexually explicit fare. Viewed as an entity, the market for this commodity is essentially unrestrained.

*Id.* at 62, 96 S.Ct. at 2448.

If the ordinance in *American Mini Theatres* had attempted to affect the operation of existing theaters, the result would have been different.

The situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech. Here, however, the District Court specifically found that "[t]he Ordinances do not affect the operation of existing establishments but only the location of new ones. There are myriad locations in the City of Detroit which must be over 1000 feet from existing regulated establishments. This burden on First Amendment rights is slight." [Nortown Theatre Inc. v. Grubbs] 373 F.Supp. [363], at 370 [(1974)].

*Id.* at 72 n. 35, 96 S.Ct. at 2453 n. 35 (plurality opinion of Stewart, J., joined by Burger, C.J., and White and Rehnquist, JJ.).[5]

In *Renton*, the Supreme Court held that a zoning ordinance prohibiting adult motion picture theaters from locating within 1,000 feet of any residential zone, single family dwelling, multiple family dwelling, church, park, or school did not violate the First Amendment because it was a permissible content-neutral time, place and manner regulation.

The Renton ordinance, like the one in *American Mini Theatres*, does not ban adult theaters altogether, but merely provides that such theaters may not be located within 1,000 feet of any residential zone, single- or multiple-family dwelling, church, park, or school. The ordinance is therefore properly analyzed as a form of time, place, and manner regulation. *Id.*, at 63, and n. 18, 96 S.Ct., at 2448 and n. 18; *id.*, at 78–79, 96 S.Ct., at 2456 (Powell, J., concurring).

Describing the ordinance as a time, place, and manner regulation is, of course, only the first step in our inquiry. *This Court has long held that regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment.* See *Carey v. Brown,* 447 U.S. 455, 462–463, and n. 7, 100 S.Ct. 2286, 2291 and n. 7, 65 L.Ed.2d 263 (1980); *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 95, 98–99, 92 S.Ct. 2286, 2289, 2291–2292, 33 L.Ed.2d 212 (1972). On the other hand, so-called "content-neutral" time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication. See *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, ——, 104 S.Ct. 3065, 3079, 82 L.Ed.2d 221 (1984); *City Council v. Taxpayers for Vincent,* 466 U.S. 789, 807, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772 (1984); *Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 647, 648, 101 S.Ct. 2559, 2563, 2564, 69 L.Ed.2d 298 (1981).

106 S.Ct. at 928 [emphasis added].

The ordinance by its terms is designed to prevent crime, protect the city's retail trade, maintain property values, and gen-

---

**5.** Only four justices joined in Part III, the portion of *American Mini Theatres* from which this statement is taken. However, based on the dissent, *id.*, 427 U.S. at 84–96, 96 S.Ct. at 2459–65 (dissenting opinion of Stewart, J., joined by

Brennan, Marshall, and Blackmun, JJ.), there is no doubt that a substantial majority would have disapproved of an ordinance putting existing theaters out of business.

erally "protec[t] and preserv[e] the quality of [the city's] neighborhoods, commercial districts, and the quality of urban life," not to suppress the expression of unpopular views. See App. to Juris. Statement 90a. *As Justice POWELL observed in American Mini Theatres, "[i]f [the city] had been concerned with restricting the message purveyed by adult theaters, it would have tried to close them or restrict their number rather than circumscribe their choice as to location."* 427 U.S., at 82, n. 4, 96 S.Ct., at 2458, n. 4.

In short, the Renton ordinance is completley consistent with our definition of "content-neutral" speech regulations as those that "are *justified* without reference to the content of the regulated speech." *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976) (emphasis added); *Community for Creative Non-Violence, supra,* 468 U.S., at ——, 104 S.Ct., at 3069; *International Society for Krishna Consciousness, supra,* 452 U.S., at 648, 101 S.Ct., at 2564. The ordinance does not contravene the fundamental principle that underlies our concern about "content-based" speech regulations: that "government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Mosley, supra,* 408 U.S., at 95–96, 92 S.Ct., at 2289–2290. 106 S.Ct. at 929 [emphasis added].

Unlike the zoning ordinances in *Renton* and *American Mini Theatres,* Ordinances No. 1243 and No. 1251 were passed in reaction to the opening of Truman Road News and were intended to prevent the continued operation of Truman Road News. In so doing, Jackson County was attempting to "grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Police Department of Chicago v. Mosley,* 408 U.S. 92, 95–96, 92 S.Ct. 2286, 2289–90, 33 L.Ed.2d 212 (1972). Because Jackson County was attempting to restrict the message purveyed by adult theaters by closing Truman Road News, Ordinances No. 1243 and No. 1251 as applied to plaintiffs are content-based, rather than content-neutral, regulations of speech. As such, they violate the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

*Challenged Ordinances Are Not Unconstitutionally Vague as Applied to Truman Road News*

Plaintiffs argue that the definitions of adult book store,[6] specified sexual activities,[7] adult mini motion picture theater,[8] and adult motion picture theater[9] in Ordinances No. 1243 and No. 1251 are so vague that they violate the Due Process Clause of

---

**6.** Under both ordinances, the definition of "adult book store" is:

An establishment having as a substantial or significant portion of its stock in trade, books, magazines, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to "Specified Sexual Activities" or "Specified Anatomical Areas", or an establishment with a segment or section devoted to the sale or display of such material.

**7.** Under both ordinances, the definition of "specified sexual activities" is "1. Human genitals in a state of sexual stimulation or arousal; 2. Acts of human masturbation, sexual intercourse or sodomy; 3. Fondling or other erotic touching of human genitals, pubic region, buttock or female breast."

**8.** Under both ordinances, the definition of "adult mini motion picture theater" is:

An enclosed building with a capacity for less than 50 persons used for presenting material distinguished or characterized by an emphasis on matter depicting, describing or relating to "Specified Sexual Activities" or "Specified Anatomical Areas" for observation by patrons therein.

**9.** Under both ordinances, the definition of "adult motion picture theater" is:

An enclosed building with a capacity of 50 or more persons used for presenting material distinguished or characterized by an emphasis on matter depicting, describing or relating to "Specified Sexual Activities" or "Specified Anatomical Areas" for observation by patrons therein.

the Fourteenth Amendment to the United States Constitution.

In *American Mini Theatres*, 427 U.S. at 58–61, 96 S.Ct. at 2446–48 [footnote omitted], the Supreme Court stated that it was unnecessary to consider a challenge based on vagueness if the ordinances were applicable to plaintiffs.

> We find it unnecessary to consider the validity of either of these arguments in the abstract. For even if there may be some uncertainty about the effect of the ordinances on other litigants, they are unquestionably applicable to these respondents. The record indicates that both theaters propose to offer adult fare on a regular basis. Neither respondent has alleged any basis for claiming or anticipating any waiver of the restriction as applied to its theater. It is clear, therefore, that any element of vagueness in these ordinances has not affected these respondents. To the extent that their challenge is predicated on inadequate notice resulting in a denial of procedural due process under the Fourteenth Amendment, it must be rejected. Cf. *Parker v. Levy*, 417 U.S. 733, 754–57, 94 S.Ct. 2547, 2560–62, 41 L.Ed.2d 439.

Here, the parties stipulated that Truman Road News is an adult bookstore, adult motion picture theater, and/or an adult mini motion picture theater located within 1,500 feet of a church or school. Any vagueness that exists in the ordinances does not affect plaintiffs. Therefore, plaintiffs' arguments that Ordinances No. 1243 and No. 1251 are so vague that plaintiffs are deprived of due process will be rejected.

### Establishment Clause

■ Plaintiffs argue that Ordinances No. 1243 and No. 1251 violate the Establishment Clause of the First Amendment.

> Without any chronological reference to a church preexisting any given adult facility in the Jackson County ordinances,

it is conceivable that a religious group could rent, purchase or just plain move into any building within 1500 feet of an adult entertainment facility and subject the owners of that facility to civil and criminal prosecution, not to mention obliterating First Amendment rights of not only the owner, but hundreds or even thousands of its customers. Such a delegation of what is effectively zoning authority, is impermissible under the Establishment Clause of the First Amendment. *Lemon v. Kurtzman*, 403 U.S. 602 [91 S.Ct. 2105, 29 L.Ed.2d 745] (1971); *Larkin v. Grendel's Den*, 459 U.S. 116 [103 S.Ct. 505, 74 L.Ed.2d 297] (1982).

Plaintiffs' Motion for Summary Judgment, filed November 22, 1985, p. 11.

In *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the Supreme Court held that two state statutes providing state aid to non-public schools violated the Establishment Clause of the First Amendment because they caused excessive entanglement between church and state. In *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982), the Supreme Court held that a state statute giving churches the power to prevent the issuance of a liquor license by filing a written objection violated the First Amendment religion clauses.

In the instant case, no basis exists to find excessive entanglement between church and state. Further, the zoning ordinances do not give churches any direct power or authority to prevent the operation of adult bookstores. Plaintiff's speculation about what might happen in the future is not a sufficient basis to find a violation of the Establishment Clause.

### STATE LAW ISSUES

#### Challenged Ordinances May Not Lawfully Regulate An Existing Non-Conforming Use

■ Plaintiffs argue that Ordinances No. 1243 and No. 1251 violate the Missouri constitutional prohibition against taking property without just compensation,[10] be-

---

**10.** The Missouri Constitution, art. I, § 26 (1945), provides:

[t]hat private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascer-

cause Truman Road News was in existence at the time these zoning ordinances were passed. Defendants respond that: 1) Truman Road News was not in business long enough to be a non-conforming use; and 2) the 120-day amortization period is a reasonable means of eliminating non-conforming uses authorized by Mo.Rev.Stat. § 64.090.

In *Missouri Rock, Inc. v. Winholtz*, 614 S.W.2d 734, 739 (Mo.App.1981), the Court held that newly enacted zoning ordinances cannot eliminate non-conforming uses in existence at the time the zoning ordinances are enacted.

The term "non-conforming use" means a use of land which lawfully existed prior to the enactment of a zoning ordinance and which is maintained after the effective date of the ordinance even though not in compliance with use restrictions. 6 Rohan, Zoning and Land Use Controls § 41.01[1] (1978). A non-conforming use is a vested property right which zoning ordinances may not abrogate. *State ex rel. Capps v. Bruns*, 353 S.W.2d 829 (Mo.App.1962). *Zoning ordinances must permit continuation of non-conforming uses in existence at the time of enactment to avoid violation of constitutional provisions preventing the taking of private property without compensation. State ex rel. Nealy v. Cole, 442 S.W.2d 128, 131 (Mo.App.1969). If a zoning regulation does not expressly exempt existing uses, the regulation will be construed as having only prospective effect to preserve the order from invalidity.* 1 Anderson, American Law of Zoning § 6.06, at 369 (2d Ed. 1976). [Emphasis supplied.]

Therefore, if Truman Road News was a non-conforming use in existence when Ordinances No. 1243 and No. 1251 were enacted, Truman Road News would be unaffected by those ordinances unless the amortization provision is lawful.

tained by a jury or board of commissioners of not less than three freeholders, in such manner as may be provided by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be dis-

*The Truman Road News Was a Non-Conforming Use in Existence at the Time That Ordinances No. 1243 and No. 1251 Were Enacted*

Relying on *Pearce v. Lorson*, 393 S.W.2d 851 (Mo.App.1965), defendants assert that Truman Road News had not been in business long enough to be a genuine non-conforming use. In *Pearce*, a chiropodist purchased a single family dwelling in a residential area and placed a sign in the window which read "Dr. R.C. Pearce, Chiropodist, Foot Specialist." At the time he purchased the dwelling, he had his office at another location and continued his practice at that location throughout the time at issue. He moved a chair and some supplies into the new building. He also treated one patient in the new office one hour prior to the passing of a zoning ordinance prohibiting medical offices in the area. The Court held that Dr. Pearce had not established a non-conforming use prior to the passage of the ordinance and that his efforts to do so were a sham. *Id.* at 854.

Here, Truman Road News opened on September 5, 1984. Ordinance No. 1243 was passed by the Jackson County Legislature on September 10, 1984, and signed into law on September 11, 1984. Ordinance No. 1251 was passed on October 1, 1984, and signed into law on October 3, 1984. There is nothing in the record to suggest that Truman Road News was not open during regular business hours or did not have a reasonable inventory during the five days before Ordinance No. 1243 was passed by the Jackson County Legislature. Furthermore, the opening of Truman Road News was not in response to the threatened passage of a zoning ordinance as in *Pearce*. In this case, the precipitous legislative action was in response to the opening of Truman Road News. Apparently, the Jackson County Legislature did not believe that Truman Road News was a sham.

turbed or the proprietary rights of the owner therein divested. The fee of land taken for railroad purposes without consent of the owner thereof shall remain in such owner subject to the use for which it is taken.

Therefore, Truman Road News was a non-conforming use in existence at the time that the Jackson County Legislature passed Ordinances No. 1243 and No. 1251.

*The 120-Day Amortization Period Provided by Ordinances No. 1243 and No. 1251 is Not a Lawful Method for Eliminating An Existing Non-Conforming Use*

In *Hoffman v. Kinealy*, 389 S.W.2d 745 (Mo.1965) (en banc), the Missouri Supreme Court held that a clause in a zoning ordinance providing for the elimination of a pre-existing lawful non-conforming use within a stated period of time violated the Missouri Constitution's prohibition against taking private property for public use without just compensation.

> [O]ur concern should be and is to determine the basic constitutional right of the matter, as we see it. Property is defined as including not only ownership and possession but also the right of use and enjoyment for lawful purposes. In fact, "[t]he substantial value of property lies in its use." It follows that: " '[t]he constitutional guaranty of protection for all private property extends equally to the enjoyment and the possession of lands. An arbitrary interference by the government, or by its authority, with the reasonable enjoyment of private lands is a taking of private property without due process of law, which is inhibited by the Constitution.' Tiedeman's Limitation of Police Powers, § 122." *Ex parte Davis*, 321 Mo. 370, 375, 13 S.W.2d 40, 41 [(1928)]. See 1 Lewis, Eminent Domain (3d Ed.), § 65, p. 56.

> . . . . .

> The amortization provision under review would terminate and take from instant relators the right to continue a lawful nonconforming use of their lots which has been exercised and enjoyed since 1910—a right of the character to which the courts traditionally have referred as a "vested right." To our knowledge, no one has, as yet, been so brash as to contend that such a pre-existing lawful nonconforming use properly might be terminated *immediately*. In

fact, the contrary is implicit in the amortization technique itself which would validate a taking *presently* unconstitutional by the simple expedient of *postponing* such taking for a "reasonable" time. All of this leads us to suggest, as did the three dissenting justices in *Harbison v. City of Buffalo*, supra [4 N.Y.2d 553, 176 N.Y.S.2d 598], 152 N.E.2d [42] at 49 [(1958)], that it would be a strange and novel doctrine indeed which would approve a municipality taking private property for public use without compensation if the property was not too valuable and the taking was not too soon, and prompts us to repeat the caveat of Mr. Justice Holmes in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 416, 43 S.Ct. 158, 160, 67 L.Ed. 322, 326, 28 A.L.R. 1321, that "[w]e are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."

*Id.* at 752–53 [footnotes omitted].

Defendants argue that "[n]umerous decisions handed-down after *Hoffman* indicate that *Hoffman* is, if not a dead letter, at least limited to the rather egregious facts under which the defendant city labored and would be modified to permit reasonable amortization provisions. *See, e.g., University City v. Diveley Auto Body Co.,* 417 S.W.2d 107 (Mo. banc 1967) *Lafayette Park Baptist Church v. Scott*, 553 S.W.2d 856 (Mo.App.1977)."

However, the cases cited by defendants do *not* suggest that *Hoffman* is no longer good law. For instance, in *University City v. Diveley Auto Body Co., Inc.*, 417 S.W.2d 107, 110–11 (Mo.1967), the Missouri Supreme Court held that a zoning ordinance requiring the owner of a *signboard* to comply with its provisions within three years was a regulation of existing property, not a prohibited taking of property. In the other case cited by defendants, *Lafayette Park Baptist Church v. Scott*, 553 S.W.2d 856 (Mo.App.1977), the Court considered whether the Board of Adjustment of the City of

St. Louis correctly applied the standards set forth in the Lafayette Square Historic District ordinance in determining whether a particular building could be demolished. The Court specifically stated that historic district ordinances are markedly more restrictive than zoning ordinances. Furthermore, the ordinance involved in *Lafayette* did not have an amortization provision. Neither of the cases cited by defendants involved an alleged unconstitutional taking of property. As a result, neither case discussed whether closing an existing business by means of a zoning ordinance with an amortization provision violated the Missouri constitutional prohibition against the taking of property without just compensation.

Defendants also argue that the amortization provision for eliminating existing nonconforming uses was authorized by Mo. Rev.Stat. § 64.090(3). Section 64.090(3) provides:

> The powers by sections 64.010 to 64.-160 given shall not be exercised so as to deprive the owner, lessee or tenant of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted except that reasonable regulations may be adopted for the gradual elimination of nonconforming uses, nor shall anything herein interfere with such public utility services as may have been or may hereafter be specifically authorized or permitted by a certificate of public convenience and necessity, or order issued by the public service commission, or by permit of the county court.

Even though § 64.090(3) authorizes "reasonable regulations ... for the gradual elimination of nonconforming uses ...," the Missouri Constitution prohibits such regulations. *Hoffman*, 389 S.W.2d at 752–53. This Court must apply the definitive decisions of the Missouri Supreme Court. Nothing in *Hoffman* suggests that a statute can authorize enactment of a regulation that violates the Missouri Constitution.

Therefore, as applied to Truman Road News, Ordinances No. 1243 and 1251 violate the Missouri Constitution's prohibition against taking property for public use without just compensation.

## ORDER

For the reasons stated, it is hereby ORDERED that:

1) defendants' motion for summary judgment against plaintiffs People Tags, Inc., Donald W. DeLap and Dale F. Studdard is denied;

2) plaintiffs People Tags, Inc., Donald W. DeLap and Dale F. Studdard's motion for summary judgment against defendants is granted;

3) Jackson County Ordinances No. 1243 and No. 1251 as applied to Truman Road News abridge freedom of speech in violation of the First Amendment to the United States Constitution;

4) Jackson County Ordinances No. 1243 and No. 1251 as applied to Truman Road News violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

5) Jackson County Ordinances No. 1243 and No. 1251 as applied to Truman Road News violate the Missouri Constitution's prohibition against taking of property without compensation, Mo. Const. art. I, § 26;

7) defendants William F. Waris, County Executive of Jackson County, Missouri, Robert J. Rennau, Sheriff of Jackson County, Missouri, the Jackson County, Missouri Legislature and the members of the Jackson County, Missouri Legislature in their official capacities: David L. Young, J.W. Patterson, Archie McGee, Fred Arbanas, Henry Rizzo, Fred J. Sanchez, Ed Growney, James D. Tindall, Harold L. Holliday, Jr., John E. Redmond, Robert E. Watson, Robert Beaird, Richard F. Schmidt, Dr. Robert E. Hertzog and Bill Randall Williams, their officers, agents, servants, successors in office, employees, directors, attorneys and all persons in active concert or participation with them or any of them, who receive actual notice of this Order by personal service or otherwise, are permanently restrained, prohibited, and enjoined from enforcing or attempting to enforce

Jackson County Ordinances No. 1243 and No. 1251 against Truman Road News;

8) the costs of this action are assessed against defendants.