Sam BROWN, Plaintiff-Respondent,

v.

McIBS, INC., Defendant-Appellant.

No. 51006.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 30, 1986.

**338**

The Stolar Partnership, S. Francis Baldwin, St. Louis, for defendant-appellant.

Gordon F. Webb, St. Louis, for plaintiff-respondent.

SIMON, Judge.

This appeal arises out of an action by plaintiff, Sam Brown, for the breach of an employment agreement by defendant, McIBS, Inc. Trial was by jury in the Circuit Court of the County of St. Louis, and a verdict was returned in favor of plaintiff in the amount of $150,000 and against defendant on its counterclaim. Judgment was entered on the verdict.

On appeal McIBS raises five points of error. McIBS claims that the trial court erred in overruling its motion for new trial because: (1) the verdict is not supported by substantial evidence; (2) the trial court abused its discretion in ordering McIBS to deposit $1,000.00 into the registry of the court, to pay for opposing counsel's travel expenses, as a condition to deposing six witnesses in the State of Colorado; (3) the plaintiff intentionally prejudiced the jury by asking a McIBS witness on cross-examination whether he had ever been arrested; (4) the trial court improperly instructed the jury on McIBS' affirmative defense; and (5) the trial court wrongly denied McIBS' motion for default judgment on its counterclaim. We reverse and remand.

Because the sufficiency of the evidence is in dispute, it is necessary to relate the evidence in some detail to adequately consider defendant's points. We set forth the facts and reasonable inferences therefrom in the light most favorable to the verdict. *Wright v. Osborn*, 356 Mo. 382, 201 S.W.2d 935, 937 (1947).

McIBS, Inc., a Delaware corporation, was organized to market a patented concrete block used in construction. The blocks are revolutionary in that mortar is not required to fuse the blocks together. The McIBS blocks are fastened by means of an interlocking tongue and groove system. The McIBS system was designed to save time in construction in that, apparently, a greater number of McIBS blocks can be laid per unit of time than conventional blocks. McIBS does not actually produce concrete blocks itself. Instead it grants to existing block manufacturers the right to produce blocks in conformity with McIBS' patents. In return, McIBS receives a royalty on each block produced by the manufacturer.

Plaintiff founded McIBS and invented the design for the patented interlocking blocks. It appears from the record that he once served as chief operating officer and chairman of the board. How he came to be employed as the corporation's director of sales is unclear. However, it is certain and the parties do not dispute that plaintiff had a valid employment contract with McIBS to serve as director of its sales department. The contract was entered into September 1, 1980. The contract provided that the term of plaintiff's employment would be from that date through August 31, 1985. The contract was subject to automatic renewal for successive one year terms unless McIBS or plaintiff elected otherwise on 30 days written notice.

Under the terms of the contract plaintiff was to "diligently and faithfully perform all of his duties to the best of his abilities in a professional manner." In return, plaintiff was to be paid an annual salary of $48,000, plus "an amount equal to 5% of the excess of net income of [McIBS] and its consolidated subsidiaries, before taxes, for such fiscal year ... over $100,000." Plaintiff's employment was subject to termination under the contract "at any time if, in the reasonable judgment of the Board of Directors, ..., there has been a material violation by [plaintiff] of his duties or obligations hereunder which makes such termination appropriate.".

Plaintiff testified that his "job was to take a brand new product and go out and put it on the market, and convince people that they could use a block without mortar." Plaintiff testified further that his job was hard and tough and that he had "to be very hard and tough in making a sale."

McIBS maintains that it terminated plaintiff because of the way he performed his duties under his "hard and tough" sales philosophy. McIBS' witnesses testified that plaintiff told potential customers that they were running their businesses improperly; that he was argumentative; that he made outlandish claims about McIBS' blocks; that he was pushy, abrasive, and unpleasant; that he was rude and crude; that because of plaintiff some customers did not want to do business with McIBS.

On March 2, 1983, Earnest Winders, Chief Executive Officer of McIBS, personally delivered a letter of termination. The letter read:

Dear Sam [Plaintiff]: It is with the deepest and sincerest remorse that I have to write this letter. I have searched for many different ways and answers to handle this problem, but none of them have worked. In order for McIBS to move forward in a more harmonious fashion than it has this past year, your services are no longer required at this office, effective March 8, 1983.

Thereafter, on March 8, 1983, McIBS' board of directors met and unanimously approved and ratified the letter written by Winders. The minutes of the meeting reflect the following:

Ernest Winders presented his reasons for the termination letter written to Sam Brown. By resolution of the Board the letter written by Ernest Winders, dated March 2, 1983, is hereby approved. Sam Brown will function in the future as consultant to the company at the discretion of Mr. Ernest Winders, Chief Executive Officer. No judgment has been made at this time as to whether Mr. Brown has fulfilled or not fulfilled the terms and provisions of the employment agreement. Accordingly, all communications by Mr. Brown regarding company matters are to be directed to the Chief Executive Officer or persons designated by him.

McIBS continued to pay plaintiff through July, 1983, even though McIBS claimed to have terminated him in March. On or about September 13, 1984, the Board met again and reaffirmed plaintiff's alleged termination as of March 8.

On November 14, 1983, plaintiff filed suit against McIBS for breach of the employment agreement. Plaintiff alleged that McIBS "failed to make payments to plaintiff when due, pursuant to the terms of said [a]greement." As a result of the breach, plaintiff claimed damages in the sum of $150,000. McIBS filed its answer on February 6, 1984. McIBS admitted that it had entered the employment agreement but denied having breached it and counterclaimed alleging that it was plaintiff who breached the agreement by failing to observe his duty of good faith under the

contract. McIBS claimed actual damages in the amount of $500,000.

With respect to plaintiff's damages, the evidence showed that in 1980, plaintiff was paid $16,000 (all that was due since his employment commenced September 1); in 1981, he was paid $46,000; in 1982, he was paid $42,000; and in 1983, he was paid $26,000. He received no salary in 1984 or 1985. During the time plaintiff was with McIBS, the corporation never generated a profit. And, while there was some evidence regarding McIBS' sales for the years 1982–1985, there was no evidence showing the net income of the corporation, before taxes, for any year.

In its first point, McIBS contends that the trial court erred in denying its motion for new trial because the verdict was not supported by substantial evidence. We agree.

McIBS argues that the maximum amount that the jury could have awarded plaintiff was $110,000—comprised of the following sums: $2,000 due and owing for 1981, plus $6,000 due and owing for 1982, plus $22,000 for 1983, plus $48,000 for 1984, plus $32,000 for January 1 through August 31, 1985 (the day the contract expired).

Plaintiff maintains that there was sufficient evidence to support the jury's verdict. Plaintiff argues that McIBS' calculation fails to take into account that plaintiff was entitled under the contract to 5% of the net profits, before taxes, over $100,000. Plaintiff admits that McIBS did not make a profit, but argues that this was because he was fired. Plaintiff points to the fact that McIBS did more business during the five months in 1983 that he was there than the entire year of 1984 and to the fact that McIBS had projected sales of $3,000,000 for 1985 as evidentiary support for the jury's award.

■ It is clear that plaintiff had no more than a prospective interest in profits that might have been generated by McIBS if he had been retained. The rule is well settled in this state that damages for the loss of anticipated profits resulting from action-

able conduct of another "are recoverable only when they are made reasonably certain by proof of actual facts which present data for a rational estimate of such profits." *Yaffe v. American Fixture Co.*, 345 S.W.2d 195, 199 (Mo.1961). Because a multitude of variable factors can enter into the composition of such damages, our courts have been strict in their evaluation of the sufficiency of the evidence warranting a recovery for loss of profits. *Spruce Co. v. Mays*, 333 Mo. 582, 62 S.W.2d 824, 828 (1933). In *Tnemec Company, Inc. v. North Kansas City Development Co.*, 290 S.W.2d 169, 174 (Mo.1956), our Supreme Court stressed that the evidence of lost profits must be sufficiently definite and certain so as to allow a reasonably accurate estimate of the loss without resorting to speculation.

▬ The general rule as to recovery of anticipated profits of a commercial business is that they are too uncertain and dependent upon changing circumstances to warrant a judgment for their recovery. *Anderson v. Abernathy*, 339 S.W.2d 817, 824 (Mo.1960). In the case of an established business, however, anticipated profits may be recovered where the plaintiff makes it reasonably certain by competent proof what they would have been. *Id.* It is indispensable that this proof include the income and expenses of the business for a reasonable anterior period, with a consequent establishing of the net profits during the previous period. *Id.*

▬ In applying the foregoing to the case sub judice, we conclude that there was not sufficient evidence to support the jury's verdict in excess of $110,000. Under the employment agreement, plaintiff was entitled to 5% of McIBS' net profits in excess of $100,000. This plaintiff was entitled to recover provided the anticipated profits were established with reasonable certainty. Plaintiff has failed to meet this burden. Plaintiff did not present the "indispensable" proof of net profits generated by McIBS during a reasonable period prior to his dismissal. In fact, it is undisputed that McIBS never made a profit from its incep-

tion through the time plaintiff was employed. The only evidence that plaintiff introduced was an estimated sales projection of $3,000,000 for the year of 1985. But, estimated sales are not net profits before taxes. In this case they do not provide the facts and data required to allow any rational estimate of anticipated profits. Employee costs, overhead, rents, and other expenses must all be deducted from sales before net profit can be determined. The record is barren of proof of any expenses.

▬ Notwithstanding, plaintiff argues that there would have been profits had he not been terminated. Generally, where profits depend on the business skill or ability of a person they are not recoverable because no method exists to enable a rational estimate or calculation of profits generated by the skill or ability. *Kerns & Lorton v. Western Union Telegraph Co.*, 170 Mo.App. 642, 157 S.W. 106, 108 (1913). However, such profits may be recovered if they are susceptible to proof of actual facts which present data for a rational estimate of what profits are attributable to a particular individual. *Oster v. Kribs Ford, Inc.*, 660 S.W.2d 348, 353–54 (Mo.App.1983). Of course, analogous to the "established business" rule allowing recovery for lost profits, the individual must present proof that shows what profits are attributable to his efforts for a reasonable previous period. This plaintiff has failed to do. Hence, there is insufficient evidence to support the jury's verdict.

Even though we remand for new trial on the first point, we shall consider McIBS' other points since they may arise on retrial. McIBS claims that it is entitled to a new trial because the trial court abused its discretion in ordering McIBS to deposit $1,000.00 into the registry of the court to pay for opposing counsel's travel expenses, as a condition to deposing six witnesses in the State of Colorado.

On October 13, 1985 McIBS filed Notice to take Depositions of six persons in Colorado on October 31, and November 1, 1985. On October 25, 1985 plaintiff filed a Motion

to Quash. Plaintiff prayed that the depositions set for October 31 and November 1 be quashed or, in the alternative, that McIBS be required to deposit with the registry of the court the sum of $1,000.00, "to be paid out by the Court to Attorney for Plaintiff for airfare, car rental, hotel accommodations and meal expenses." Plaintiff maintained that the taking of the "depositions on the eve of trial in Colorado [would] pose a great hardship and expense on Plaintiff and his attorney." That same day, McIBS filed an affidavit in opposition of plaintiff's motion. The affidavit recited that the six witnesses were residents of Colorado and beyond the subpoena power of the trial court; that McIBS lacked the financial resources to produce the witnesses at trial; that the taking of the depositions at an earlier date was not possible because McIBS could not pay for their taking. The affidavit also contained the expected testimony of each of the witnesses. The trial court entered an Order conditioning McIBS' right to take the depositions upon the payment of $1,000.00 into the registry of the court.

It has been decided that the taking of depositions at a location distant from the situs of trial may be conditioned, in the trial court's discretion, upon payment of the opposing attorney's travel expenses. Rule 56.01(c)(2); *State ex rel. Vanderpool Feed & Supply Co. v. Sloan*, 628 S.W.2d 414, 416 (Mo.App.1982). The power of the trial court to enter such an order was first decided in *Vanderpool*. However, because of the procedural context in which the case was appealed, the parameters of the trial court's power was not decided.

In *Vanderpool*, the plaintiff filed notice of the taking of depositions in Oklahoma and Texas. The defendants sought a protective order asking either that the depositions be stayed or that the depositions be permitted only on condition that plaintiff pay the expenses of defendant's attorneys incidental to attending the depositions. The trial court held a hearing and announced an intention to permit the depositions on the condition that the plaintiff advance expenses. The plaintiff thereupon filed a petition for a Writ of Prohibition to prevent the entry of the protective order. In his petition, the plaintiff did not claim that the circumstances and facts were insufficient to justify the order. The plaintiff only claimed that the trial court lacked any authority to enter such an order. The court concluded that the trial court was indeed possessed of such authority by virtue of Rule 56.01(c)(2). Further, because the proceeding was in prohibition the court placed the burden on the plaintiff to show that the trial court exceeded its jurisdiction. *See State ex rel. Headrick v. Bailey*, 365 Mo. 160, 278 S.W.2d 737 (banc 1955). The plaintiff failed to carry this burden. The court concluded that because no record had been supplied on the matter, it had no basis upon which to prohibit the trial court's order.

■ During the course of the opinion the court remarked that had the issue arisen in an appeal after trial, the burden of proof would have been on the defendants. "There can be no doubt but that [defendant] had the burden, as [the party seeking the condition], to demonstrate to the trial court facts sufficient to justify making the [order] in question. Indeed, the burden was heavy to show cause for departure from the usual and customary rule that each party should bear its own expenses of litigation." *Vanderpool*, 628 S.W.2d at 414. We believe that this is the appropriate rule in this case.

■ Rule 56.01(c) provides in pertinent part:

Protective orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: ... (2) that the discovery may be had only on specified terms and conditions....

Clearly, the rule contemplates that "good cause" must be shown before the trial

court may enter a protective order. Of course, the trial court has broad discretion in determining whether "good cause" exists. *See Welsh v. Dean Witter Reynolds Organization, Inc.*, 657 S.W.2d 27, 30 (Mo. App.1983). However, the trial court must have evidence presented before it can exercise discretion. Without evidence, it is impossible to ascertain whether or not "good cause" does, in fact, exist. *See United States v. American Cyanamid Co.*, 34 F.R.D. 532, 533 (S.D.N.Y.1965).

■ In the instant case, plaintiff's motion contains the naked assertion that taking depositions in Colorado would "pose great hardship and expense on Plaintiff and his attorney." Plaintiff did not present evidence to support his motion. There is nothing in the record to indicate any annoyance, embarrassment, oppression, or undue burden or expense. Accordingly, plaintiff's motion was improvidently granted.

In its third point, defendant contends that the improper question regarding "arrest" put by plaintiff's counsel to Bruce Stout, a witness for McIBS, on cross examination prejudiced the jury. According to the record, plaintiff's counsel is aware of the impropriety of the question and it should not occur on retrial.

For its fourth point, defendant claims the trial court improperly instructed the jury on McIBS' affirmative defense. McIBS claims it had two alternative, yet consistent, theories of defense and that the trial court erred in incorporating them into one instruction.

The trial court charged the jury as follows:

### INSTRUCTION NO. 9

Your verdict must be for defendant on plaintiff's claim for breach of contract, if you believe:

First, plaintiff failed to diligently and faithfully perform all of his duties to the best of his abilities in a professional manner, and

Second, because of such failure, plaintiff's contract obligations were not performed, and

Third, the Board of Directors of defendant voted to terminate plaintiff's employment, and

Fourth, the Board of Directors of defendant so terminated plaintiff's employment pursuant to the reasonable judgment of the Board of Directors of defendant that plaintiff had materially violated his duty to diligently and faithfully perform all of his duties to the best of his abilities in a professional manner which made said termination appropriate in the reasonable judgment of defendant's Board of Directors.

McIBS tendered two alternative instructions which were refused.

### INSTRUCTION No. A

Your verdict must be for defendant on plaintiff's claim for breach of contract if you believe:

First, the Board of Directors of defendant voted to terminate plaintiff's employment, and

Second, the Board of Directors of defendant so terminated plaintiff's employment pursuant to the reasonable judgment of the Board of Directors of defendant that plaintiff had materially violated his duty to diligently and faithfully perform all of his duties to the best of his abilities in a professional manner, which made said termination appropriate in the reasonable judgment of defendant's Board of Directors.

### INSTRUCTION No. B

Your verdict must be for defendant on plaintiff's claim for breach of contract, if you believe:

First, plaintiff failed to diligently and faithfully perform all of his duties to the best of his abilities in a professional manner, and

Second, because of such failure, plaintiff's contract obligations were not performed.

344

Before addressing this point, we are compelled to discuss what we discern to be a flaw in the verdict directing instruction given on plaintiff's claim. This instruction, patterned after MAI 26.02, charged the jury as follows:

INSTRUCTION NO. 8

Your verdict must be for plaintiff on plaintiff's claim for breach of contract if you believe:

First, defendant did not pay to plaintiff the sums due under the contract, and

Second, because of such failure, defendant's contract obligations were not performed, and

Third, plaintiff was thereby damaged, unless you believe that plaintiff is not entitled to recover by reason of Instruction Number 9.

MAI 26.02 is given in situations involving bilateral contracts. It is to be given "only when there is no dispute concerning the *terms* of the agreement *and* the defendant's obligation to perform his agreement." MAI 26.02 Notes on Use (1980 Revision). Here, McIBS' theory of defense was that its obligation had been excused because plaintiff first breached the contract by failing to perform his obligations thereunder.

Plaintiff's petition averred that "[p]laintiff has at all times fully complied with each and every term and provision of said Employment Agreement and stands ready, willing and able, at all times, to perform and continue to perform each and every obligation of plaintiff under the terms of said Agreement." McIBS denied this averment and further set out what it styled as an "affirmative defense" of breach of contract by plaintiff. McIBS alleged that as a result of plaintiff's breach, it "has not been and is not obligated to continue to perform [under the Agreement]." Under the pleadings, issue was joined as to whether plaintiff had performed his obligations under the employment agreement. Plaintiff has the burden of proof as to this issue of fact. *See Rosen v. Alside, Inc.*, 248 S.W.2d 638, 644 (Mo. 1952). Thus, Instruction 8, as given to the jury, was erroneous because it failed to set forth an essential element of plaintiff's case as pleaded. *See Clayton Brokerage Co. of St. Louis, Inc. v. Pilla*, 632 S.W.2d 300, 302–05 (Mo.App.1982).

Under the pleadings and evidence, we conclude that for plaintiff to prevail the jury must find: (1) that plaintiff diligently and faithfully performed all of his duties to the best of his abilities in a professional manner; (2) that McIBS did not pay to plaintiff the sums due under the contract; (3) that because of such failure, McIBS' contract obligations were not performed; and (4) that plaintiff was thereby damaged. *Cf. Seuf, Inc. v. Bartlett*, 665 S.W.2d 31, 33 (Mo.App.1984).

Keeping the foregoing in mind, we believe that McIBS' claim of error on its affirmative defense instruction should resolve itself on retrial. McIBS is entitled to an instruction on any affirmative defenses specifically pleaded and having evidentiary support. We note that the affirmative defense contained in McIBS' instruction A was not specifically pleaded in its answer. The only affirmative defense pleaded with specificity is plaintiff's breach of the employment agreement.

Finally, McIBS contends that the trial court erred in failing to enter a default judgment in favor of McIBS on its counterclaim because plaintiff failed to file a timely reply thereto. However, it is clear to us that the trial court acted within its discretion in allowing plaintiff to file his reply out of time. Rule 44.01(b); *Jones v. First Union Bankcorporation*, 646 S.W.2d 412, 414 (Mo.App.1983). We find no error.

Judgment reversed and cause remanded for proceedings consistent with this opinion.

GARY M. GAERTNER, P.J., and STEPHAN, J., concur.