Joe E. WALKER, Jr., d/b/a Last
Chance Lounge, Plaintiff,

v.

CITY OF KANSAS CITY,
MISSOURI, Defendant.

No. 87–0939–CV–W–8.

United States District Court,
W.D. Missouri, W.D.

Oct. 20, 1988.

Errol Copilevitz, John P. Jennings, Jr., Janet Davis Baker, Copilevitz, Bryant, Gray & Jennings, P.C., Kansas City, Mo., for plaintiff.

Dan G. Jackson, III, Asst. City Atty., Kansas City, Mo., for defendant.

## ORDER

STEVENS, District Judge.

On June 28, 1988 this court issued a memorandum opinion and order finding that the city's C–X zoning ordinance was unconstitutional as applied to plaintiff Joe E. Walker, Jr. On August 3, 1988 the court held an evidentiary hearing on the proper scope of injunctive relief and on the issue of damages. Oral argument on the legal issues concerning the proper relief was held on September 2, 1988. The court has considered both the evidence and legal arguments presented by counsel at these two hearings and this order announces the court's holding in regard to the issues of damages and injunctive relief.

The facts giving rise to this case were discussed in detail in the court's June 28 order and need not be repeated here. *See Walker v. City of Kansas City, Missouri,* 691 F.Supp. 1243 (W.D.Mo.1988). In that order the court held that the city's C–X zoning ordinance, which regulates the location of various forms of adult entertainment, including go-go dancing, was unconstitutional as applied to Walker because the ordinance did not contain any objective standards for the city council to use in determining whether C–X zoning was appropriate in a particular location. Walker seeks injunctive relief and $250,000 in anticipated lost profits for the violation of his first amendment rights.

## I. *Injunctive Relief*

Injunctive relief is a proper remedy for violation of a constitutional right when a plaintiff makes a showing of irreparable harm and inadequacy of legal remedies. *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07, 79 S.Ct. 948, 954–55, 3 L.Ed.2d 988 (1959). Once a plaintiff proves these two elements a "court may grant injunctive relief, but the relief must be no broader than necessary to remedy the constitutional violation." *Newman v. State of Alabama,* 683 F.2d 1312, 1319 (11th Cir. 1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983).

Use of an injunction is especially appropriate in situations where zoning ordinances have been declared unconstitutional. As the Tenth Circuit Court of Appeals has noted

[i]f the zoning ordinance is void ... the properties intended to be affected thereby are unzoned and the property owners may proceed with any other lawfully intended use. In such cases, the court is limited to the remedy of declaring the zoning ordinance void and finding that the property owner affected is entitled to use his property for any lawful purpose without regard to the void zoning ordinance.

*Carter v. City of Salina,* 773 F.2d 251, 255 (10th Cir.1985). This remedy is appropriate in situations where an ordinance has been declared unconstitutional on its face or where the ordinance is invalid as applied to a specific piece of property, as in the present case. *Id.* Courts in this district have consistently held that a permanent injunction is a proper remedy in situations where an invalid zoning ordinance has violated a business' or individual's first amendment rights. *See, e.g., People Tags, Inc. v. Jackson County Legislature,* 636 F.Supp. 1345 (W.D.Mo.1986) (court granted permanent injunction after finding that county ordinances regulating the location of adult movie theatres and bookstores were content-based regulations which violated the first amendment); *Conlon v. City of North Kansas City, Missouri,* 530

F.Supp. 985 (W.D.Mo.1981) (court issued permanent injunction against city after finding that city ordinance regulating solicitation for charitable or religious purposes was unconstitutionally vague because it gave impermissible discretion to city officials to determine whether solicitation permits would be issued).

At the September 2, 1988 oral argument the city attorney conceded, in response to a question from the court on the scope of injunctive relief, that in view of the court's holding in this case and his reading of the applicable case law an injunction against enforcement of the ordinance at Mr. Walker's location may be appropriate. The city attorney stated, however, that it was his belief the injunction should last only for the period that plaintiff maintains his leasehold interest in the property on which the Last Chance Lounge is located. The court agrees that in light of the June 28 order the city must be enjoined from enforcing the C–X zoning ordinance as to Mr. Walker. The court disagrees, however, with the city attorney's interpretation that the injunction may last only as long as Mr. Walker maintains his leasehold property interest.

■ Since the city may not enforce the C–X zoning ordinance against Walker, he may now have go-go dancing at the Last Chance Lounge. Thus, if the city adopts a new zoning ordinance at some future date, Walker's use of the property would become a nonconforming use. All zoning ordinances must contain a provision exempting existing nonconforming uses from their operation. *City of Monett, Barry County v. Buchanan*, 411 S.W.2d 108 (Mo.1967). *See also People Tags*, 636 F.Supp. at 1356 (adult bookstore, which had been in operation six days before the passage of one ordinance and almost a month before the passage of another was an existing nonconforming use); *Boyce Industries v. Missouri Highway and Transportation Commission*, 670 S.W.2d 147, 150 (Mo.App. 1984) ("All zoning restrictions are required

to exempt from their immediate operation existing nonconforming uses.").

■ It is well-recognized that [a] transfer or change of ownership is not an abandonment of the right to a nonconforming use. Thus, a noncomforming use may be transferred to a successor in title. Similarly, a lessee has the same right to use premises for a nonconforming use as was vested in the prior lessor or tenant.

P. Rohan, 6 *Zoning and Land Use Controls* § 41.03[6] at 41–93 to 41–95. Thus, assuming Walker begins to provide go-go dancing entertainment at the Last Chance Lounge, the bar will become a nonconforming use. The right to continue the nonconforming use is not personal to Walker but, rather, runs with the land.[1] Thus,

[t]he fact that the nonconforming use was carried on by a tenant and that it is now contemplated to lease the land to a new tenant is not controlling. The right to continue the nonconforming use, once established and not abandoned, runs with the land and this right is not confined to any one individual or corporation. A vested right, unless abandoned, to continue the nonconforming use is in the land.

*Eitnier v. Kreitz Corp.*, 404 Pa. 406, 172 A.2d 320, 323 (1961). *See also Amico v. New Castle County*, 101 F.R.D. 472, 483 (D.Del.1984), *aff'd without opinion*, 770 F.2d 1066 (3d Cir.1985) (vested right in nonconforming use exists if permitholder has made "some substantial expenditure, obligation or change in relation to land" even if the nonconforming use has not actually begun); *Beasley v. Potter*, 493 F.Supp. 1059, 1071 (W.D.Mich.1980) ("A party does not acquire a protected interest in a nonconforming use of property unless he can show nonconformance in a reasonably substantial manner."); *Rohan, supra*, cases cited at footnotes 104–106. As a result, once plaintiff begins business as a go-go dancing bar he will have a vested right in the nonconforming use, a right which runs with the land. Therefore, the court will grant plaintiff's request for a permanent injunction without imposing any

1. Of course, if the use is abandoned or discontinued a different situation would arise.

limitations on that injunction.[2]

## II. *Damages*

 Plaintiff, three current or former owners of go-go dancing bars, and Fred Zimmerman, a private investigator with extensive experience in the city's liquor and amusement control department, testified at the August 3, 1988 hearing. Plaintiff attempted to establish, through the testimony of each of these witnesses, the amount of profits that could have been made had he been permitted to have go-go dancers at the Last Chance Lounge beginning in April 1986 when the City Plan Commission approved his application for C–X zoning and recommended that the city council approve the zoning.

Missouri courts have held that an individual may recover the anticipated profits of an *established* business " 'only when they are made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount; ...' as shown by 'proof of the income and expenses of the business for a reasonable time anterior to its interruption, with a consequent establishing of the net profits during the previous period.' " *All Star Amusement, Inc. v. Jones,* 727 S.W.2d 930, 931 (Mo.App. 1987) (quoting *Coonis v. Rogers,* 429 S.W. 2d 709, 714 (Mo.1968)). While it is difficult for an established business to prove anticipated profits, "[a] new business labors under a greater burden of proof in overcoming the general rule that evidence of expected profits is too speculative, uncertain, and remote to be considered and does not meet the legal standard of reasonable certainty" since a new business has no past record upon which to base the figures. *Handi Caddy, Inc. v. American Home Products Corp.,* 557 F.2d 136, 139 (8th Cir.1977).

In *Handi Caddy,* the court specifically noted that while Missouri law does not preclude a new business from recovering lost profits, an individual or corporation attempting to recover such profits must meet a greater burden of proof than would an established business. Thus, in order for a plaintiff to recover anticipated lost profits he must establish "actual facts, with data for a rational estimate [of the anticipated profits'] amount." *Id.* at 139. *See also Rich v. Eastman Kodak Co.,* 583 F.2d 435, 437 (8th Cir.1978) (individual attempting to establish anticipated profits must show "continuing, average and stable basis for the projection; otherwise his playing with figures is too speculative and conjectural to sustain any verdict"). In addition, the Missouri Court of Appeals has noted that anticipated profits will not be awarded where the profits "depend on the business skill or ability of a person ... because no method exists to enable a rational estimate or calculation of profits generated by the skill or ability." *Brown v. McIbs, Inc.,* 722 S.W.2d 337, 341 (Mo.App.1986). An exception exists to this general rule, however, if the individual seeking the profits presents "proof of actual facts which present data for a rational estimate of what profits are attributable to a particular individual." *Id.*

Under the court's holding in *Brown,* plaintiff must produce evidence of that portion of the bar's profits that directly result from his management abilities. No such evidence was proffered. Although Walker testified to his extensive experience operating the Last Chance Lounge and other similar establishments, he admitted that he has no experience managing a go-go facility. The uncontroverted evidence at the hearing was that the profits realized by a go-go dancing bar depend greatly on the individual managing the bar. For example, Cletis Kankey, the owner of AB's Lounge, testified that his bar lost a significant amount of money due to an ineffective manager. He stated that after he fired the manager in 1984 it took about two years for the bar to return to the level at which it had previously operated. In addition, Shirley Barry, the former owner of Balloons (now known

---

**2.** The court cannot definitively rule on whether go-go dancers could continue to perform at the location if a change of ownership or lessor should occur since that situation is not currently before the court. The court includes this discussion not to announce a definitive rule of law but to explain why it does not believe it would be appropriate to place limitations on the injunction, as suggested by the assistant city attorney.

as Angelina's), testified that one reason she sold the bar to Kay Stark,[3] was that go-go dancing establishments are difficult to run and that the women who dance at the bars can sometimes be difficult individuals with whom to work. Barry's testimony indicates that the skills necessary to manage a "traditional" bar are not necessarily transferable to a go-go dancing bar.

Even if Walker had convinced the court that a portion of his management abilities would directly contribute to the profitability of the Last Chance Lounge, he has not met his burden of establishing actual facts which would make the amount of his anticipated profits reasonably certain. Fred Zimmerman, the private investigator hired by plaintiff, testified about his visits to three go-go dancing bars: AB's Lounge, Club Michael's and the Pink Garter.[4] While Zimmerman established that bars with go-go dancing were able to sell drinks at a higher price than those establishments without such entertainment,[5] his testimony did not come anywhere close to reinforcing Walker's testimony that the Last Chance Lounge could operate at twenty-five percent capacity and that Walker could therefore base his lost profits on the number of drinks he would sell per hour to thirty people.[6]

Zimmerman testified that although he never entered AB's Lounge, he observed seven cars in front of the bar and seven cars on 79th Street when he drove past AB's on two occasions. Zimmerman visited Club Michael's on three occasions, actually entering the lounge only once, on July 20 at 1:45 p.m. when four customers were present.[7] His visit to the Pink Garter Lounge on July 28, 1988 at 12:30 p.m. re-vealed that ten customers were patronizing the bar. He drove by at the same time on July 29 and observed ten cars in the lot.

The testimony of Stark, the current owner of Angelina's, is somewhat more helpful to plaintiff. She testified that her bar had a capacity of 110 people and that her average crowd was twenty to twenty-five customers, an occupancy rate between approximately 18 and 23 percent, although sometimes she was packed and other times business was slow. She added that there was no set rule for occupancy and that sometimes Monday evenings were faster than Friday evenings. In arguing that an award of lost profits should be based on a 25 percent occupancy figure, plaintiff relies heavily on Stark's testimony that she believed Walker would do better at his location than she was able to do at hers since she is located in a high crime area.

This evidence does not convince the court that plaintiff has proved with "reasonable certainty" the amount of his anticipated profits. The number of customers which Zimmerman observed at the three lounges he investigated does not come anywhere near the number of customers which Walker testified he anticipated would patronize the Last Chance Lounge. Although Kay Stark had an occupancy rate closer to that which Walker testified he believed he would have, her testimony does not clearly establish that Walker would successfully achieve a twenty-five percent occupancy rate. In addition, Walker's testimony that he had approximately five calls a day after news stories of this lawsuit appeared in the paper does not establish that each of these individuals would actually visit the Last Chance Lounge. There was no evidence

---

3. Stark also testified at the hearing. *See, infra,* at 1092.

4. Each of these bars had go-go dancing before the C–X zoning ordinance was enacted and, therefore, was grandfathered into the present ordinance.

5. All of the bar owners who testified corroborated this testimony.

6. Capacity is approximately 120 people.

7. On July 29 he drove past Club Michael's at 1 p.m. and observed four cars in front of the bar and one customer standing by the bar's entrance. He drove by later that day at 4:30 p.m. and noticed twenty-three cars in the lot while at 8 p.m. he noticed twenty-nine cars in the lot and four motorcycles. Although Zimmerman testified that the club has a capacity of 185 people the court cannot determine at what percentage occupancy the bar operated since there is no evidence of how many people were in each car or that the occupants of these cars were actually Club Michael's customers.

presented that each of the phone calls came from a different individual nor that the individuals would visit the bar more than once after the "novelty" of the bar diminished.[8]

In short, this court holds that plaintiff did not prove his anticipated profits with the degree of reasonable certainty required by Missouri courts and the Eighth Circuit's interpretation of Missouri case law in *Handi Caddy*. Plaintiff cites *Miller Industries v. Caterpillar Tractor Co.*, 733 F.2d 813 (11th Cir.1984), in support of his position that he has proven his anticipated profits with reasonable certainty. The court in *Miller* held that the owner of the PRISCILLA ANN, a new fishing boat that was unable to sail for several weeks because of a faulty engine had proven anticipated lost profits with reasonable certainty by relying on the catches of three similar vessels. The court noted that the "appropriateness of the other vessels' catches for comparison was demonstrated by the PRISCILLA ANN's comparable average daily catches during the period all four vessels were fishing" and the fact that all four vessels were subject to similar factors, such as inclement weather. *Id.* at 822.

Even if plaintiff had evidence that the bar had operated for some period of time with dancers, and had profits similar to that of other go-go bars during that time, the court believes *Miller* is distinguishable. First, unlike *Miller,* where the boats were fishing in the same location, the bars mentioned by plaintiff's witnesses are not located in the same or similar parts of Kansas City. Perhaps more importantly, however, plaintiff has produced evidence of only one business, Angelina's, that has a profit margin anywhere near the amount plaintiff claims he would have had. Plaintiff in *Miller,* on the other hand, produced evidence of three such businesses. Because plaintiff has not proven his damages with reasonable certainty, the court will not award damages for the loss of his anticipated profits.

The court will, however, award plaintiff $1.00 in nominal damages since "[t]he general theory of nominal damages is that they should be allowed where a legal right has been invaded but no actual damages were suffered or proved." *McClellan v. Highland Sales & Investment Co.*, 484 S.W.2d 239, 241 (Mo.1972). Plaintiff has established a violation of a legal right and, consequently, the court believes that an award of nominal damages is appropriate in this case.

Having decided the proper remedy for the city's violation of plaintiff's first amendment rights, the only issue remaining for this court's consideration is plaintiff's request for an award of attorney's fees. The parties have briefly discussed this issue in other appearances before the court but have not presented any evidence on the amount of the fees. The court will grant a hearing on this issue if the parties desire or, alternatively, the court will decide the issue based on pleadings and appropriate affidavits.

Accordingly, it is

ORDERED that defendant is permanently enjoined from enforcing its C–X zoning ordinance against Joe E. Walker d/b/a Last Chance Lounge. It is further

ORDERED that plaintiff is awarded damages in the amount of $1.00. It is further

ORDERED that within ten days of the date of this order the parties shall advise the court whether they wish to address the issue of attorneys' fees through an evidentiary hearing or through the use of pleadings and affidavits. The court will then issue an appropriate order setting a date for a hearing or, alternatively, for the filing of the necessary pleadings.

---

8. Walker testified on cross-examination that his bar would be "brand new" and that would increase the number of customers. Indeed, this statement appears to concede that there would be at least some decline in business after the bar's opening as a go-go dancing establishment.