16 F.Supp.2d 1062 (1998)
AMERICAN STATES INSURANCE CO., Plaintiff,
v.
CREATIVE WALKING, INC., Defendant.
No. 4:97 cv 1125 SNL.
United States District Court, E.D. Missouri, Eastern Division.
August 17, 1998.
*1063 Russell F. Watters, Managing Principle, David P. Bub, Brown and James, P.C., St. Louis, MO, for American States Ins. Co.
Arthur G. Muegler, Jr., St. Louis, MO, Donald V. Nangle, St. Louis, MO, for Creative Walking, Inc.

MEMORANDUM
LIMBAUGH, District Judge.
This matter is before the Court on the Plaintiff's Motion for Summary Judgment (# 18). The underlying cause of action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Plaintiff seeks a declaration of its rights and obligations under a commercial property insurance policy issued in favor of the Defendant.

Background
Plaintiff issued to Defendant a Business Owners commercial property insurance policy ("the policy") with effective dates of coverage from November 6, 1995 to November 6, 1996. In addition to providing coverage for damage to Defendant's business personal property, the policy also provides coverage for loss of business income and extra expense for the actual loss sustained not exceeding twelve months. The business income and extra expense provisions of the policy provide, respectively:
f. Business Income
We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from any Covered Cause of Loss.
We will only pay for the loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.
Business Income means the:
(1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and
(2) Continuing normal operating expenses incurred, including payroll.
* * * * * *
g. Extra Expense
We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises, including personal property in the open (or in a vehicle) within 100 feet, caused by or *1064 resulting from any Covered Cause of Loss. Extra Expense means expense incurred:
(1) To avoid or minimize the suspension of business and to continue "operations";
(a) At the described premises; or
(b) At replacement premises or at temporary locations, including:
(i) Relocation expenses; and
(ii) Costs to equip and operate the replacement or temporary locations.
(2) To minimize the suspension of business if you cannot continue "operations".
(3) (a) To repair or replace any property; or
(b) To research, replace or restore the lost information on damaged valuable papers and records;
to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage f., Business Income.
We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.
The "period of restoration" is defined as:
"Period of Restoration" means the period of time that:
a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and
b. Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.
On or about February 5, 1996, the water main at Defendant's business premises suddenly and unexpectedly broke. The resulting flood caused direct physical loss and damage to Defendant's business personal property. There is no dispute that the damage caused by the flood is a covered loss under the policy.
After the flood, Defendant's business premises were untenantable. On February 18, 1996, Defendant began conducting its business operations from a temporary facility. Sometime thereafter, it was determined that Defendant's original business premises were no longer desirable and Defendant made the temporary facility its full-time business headquarters.
Pursuant to the aforementioned provisions of the policy, Defendant submitted a claim for loss of business income and extra expense in the amount of $94,000.00. Defendant's claim was based, in part, on a slow down of its business operations for a period of approximately eighteen weeks following the flood.
Plaintiff maintains that the business income and extra expense provisions of the policy do not provide reimbursement for a slow down in business activity. Rather, it contends that "necessary suspension" as used in the policy refers to a total cessation of business activity. Accordingly, Plaintiff argues that Defendant is only entitled to reimbursement for the loss of business income sustained during the thirteen day period between the flood and the relocation of Defendant's business headquarters, and the extra expense associated with the relocation. Plaintiff has calculated this amount to be $14,723.87.
Although not delineated as such, Defendant seems to make three principal arguments in opposition to Plaintiff's motion for summary judgment: (1) that the business interruption in February-March, 1996, cost Defendant the opportunity to procure valuable contracts which resulted in a loss of business income for the remainder of the calender year; (2) that Defendant had intended to return to its original business premises until August, 1996; and (3) that the policy provides coverage so long as there was a necessary suspension of business activity at its original business premises.[1]

*1065 Discussion

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established its right to judgment with such clarity as not to give rise to controversy. New England Mutual Life Insurance Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Electric Cooperative Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence to allow a jury to return a verdict in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207, 210 (8th Cir.1976).
As a preliminary matter, the Court agrees with Plaintiff that "necessary suspension" as used in the business loss and extra expense provisions of the policy refers only to a total cessation of business activity. Under Missouri law, words in insurance contracts are given their ordinary meaning. Arbeitman v. Monumental Life Ins. Co., 878 S.W.2d 915, 916 (Mo.Ct.App.1994). Although ambiguities are to be construed in favor of coverage and against the insurer, an unambiguous policy will be enforced as written. Peters v. Employers Mutual Casualty Co., 853 S.W.2d 300, 302 (Mo.banc 1993). The court must view the language in light of the meaning that would ordinarily be understood by the lay person who bought and paid for the policy. Robin v. Blue Cross Hospital Service, Inc., 637 S.W.2d 695, 698 (Mo.banc 1982).
Unlike the policies at issue in Omaha Paper Stock Company v. Harbor Insurance Company, 596 F.2d 283 (8th Cir.1979) and Hawkinson Tread Tire Service Co. v. Indiana Lumbermens Mutual Insurance Co. of Indianapolis, Ind., 362 Mo. 823, 245 S.W.2d 24 (1951), cited by Defendant, the policy at issue in this case does not provide coverage for a "total or partial suspension" of business activity. Instead, the policy provides coverage only for a "necessary suspension of ... operations." This otherwise unqualified language unambiguously refers to a total cessation of Defendant's business activities. This view is consistent with other cases applying similar policy language. See e.g., Royal Indemnity Insurance Co. v. Mikob Properties, Inc., 940 F.Supp. 155, 160 (S.D.Tex.1996)("if the insured premises are still operating, the business interruption clause does not cover a decrease in income"); Home Indemnity Co. v. Hyplains Beef, 893 F.Supp. 987, 991 (D.Kan.1995)("if one were to apply the plain, ordinary meaning to the use of the phrase `necessary suspension' within the policy, in order for a claim to fall within the coverage provision it would require that *1066 any direct physical loss of or damage to property result in the cessation of [the insured's] operations"); Keetch v. Mutual of Enumclaw Insurance Co., 66 Wash.App. 208, 831 P.2d 784, 786 (1992)("[t]he endorsement does not provide that coverage exists because the motel's quality of service may be diminished by an occurrence").
Likewise, it is of no consequence that Defendant resumed its operations at another facility. "[T]he purpose of a business interruption policy is to indemnify the insured `for loss caused by the interruption of a going business consequent upon the destruction of the building, plant, or parts thereof ...'" Ramada Inn Ramogreen, Inc., v. Travelers Indemnity Co., 835 F.2d 812, 814 (11th Cir.1988)(quoting 1 G. Couch, Couch on Insurance, § 1:28 (2d ed.1984)). If the insured is able to continue its business operations at a temporary facility, it has not suffered a "necessary suspension" of its operations.
Defendant's arguments that it had intended to return to its original premises until August, 1996, and that the policy provides coverage so long as there is a necessary suspension of business activity at the original premises are unavailing. Simply put, the business loss and extra expense provisions of the policy are not so limited. Indeed, the extra expense provisions expressly contemplate business operations from a temporary facility. Accordingly, Defendant is only entitled to reimbursement for the loss of business income sustained during the thirteen day period in which its business operations were necessarily suspended and the extra expense associated with the relocation of its headquarters.
Plaintiff has submitted evidence that Defendant's loss of business income and the extra expense associated with the relocation of its headquarters amounts to $14,723.87. Defendant does not dispute this amount as calculated.[2] Instead, Defendant argues that its loss of business income is greater because it lost the opportunity to procure valuable contracts in February and March, 1996. This argument, however, is too speculative as matter of law.
"Under Missouri law, `to obtain a damage award for lost profits at trial, [Defendant] must produce evidence that provides an adequate basis for estimating lost profits with reasonable certainty. Proof of actual facts which present a basis for a rational estimate of damages without resorting to speculation is required.'" Polytech, Inc. v. Affiliated FM Insurance Co., 21 F.3d 271, 276 (8th Cir.1994)(quoting Manor Square, Inc. v. Heartthrob of Kansas City, Inc., 854 S.W.2d 38, 44 (Mo.Ct.App.1993)); see also Brown v. McIBS, Inc., 722 S.W.2d 337, 341 (Mo.Ct. App.1986) ("The general rule as to recovery of anticipated profits of a commercial business is that they are too uncertain and dependent upon changing circumstances to warrant a judgment for their recovery."). It is impossible to say with a degree of assurance what contracts Defendant would have procured or how much income any contracts that were procured would have generated. Accordingly, Plaintiff's method of calculation is correct.
In view of the foregoing conclusions, Plaintiff's Motion for Summary Judgment should be granted and this case should be dismissed with prejudice.
NOTES
[1] The Court has previously addressed and rejected Defendant's argument that the case should be dismissed for lack of subject matter jurisdiction. American States Insurance Company v. Creative Walking, Inc., 4:97 cv 1125 SNL (E.D.Mo. September 16, 1997)(Order denying Defendant's motion to dismiss).
[2] Although Defendant's memorandum in opposition references other representations made by Plaintiff's accountants as to the appropriate amount of business loss allegedly suffered by Defendant, the other figure was based upon a longer period of time. No evidence has been presented that Defendant's business loss exceeded Plaintiff's calculations when properly limited to the thirteen day period in which Defendant's business operations were necessarily suspended.