**Jerry McDOWELL and Marie McDowell, d/b/a McDowell Trash Service, Appellants,**

v.

**LAFAYETTE COUNTY COMMISSION, Lafayette County Planning and Zoning, Respondents,**

and

**Henry Fiegenbaum, et al., Respondents/Intervenors.**

No. WD 42052.

Missouri Court of Appeals, Western District.

March 27, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 1990.

Application for Transfer Sustained July 31, 1990.

Case Retransferred Oct. 9, 1990.

Court of Appeals Opinion Readopted Oct. 10, 1990.

Sherwin L. Epstein and Mark R. Warnick of Law Offices of Sherwin L. Epstein & Associates, Kansas City, for appellants.

J. Armin Rust, Asst. Prosecuting Atty., Lexington, for respondents.

James G. Trimble, Parkville, W.R. Schelp, Lexington, for respondents/intervenors.

Before GAITAN, P.J., and CLARK and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a judgment denying a claim for nonconforming use in the operation of a landfill. The judgment is affirmed.

What began as and what should have remained a simple proceeding to determine a single question of law ballooned into an extended proceeding.

This case, originated by appellants, sought a declaratory judgment to determine a single question of law, to wit, do appellants have a legal or lawful nonconforming use to operate a landfill in Lafayette County, Missouri? The surrounding landowners sought to intervene and to secure an injunction to prohibit the landfill operation. Before the case (which was tried to the court) was heard, the trial court permitted adjoining landowners to intervene.

The pertinent facts relative to the single question are as follows:

Appellants own and operate a trash disposal service. They hired consultants and engineering experts to investigate the possibility of locating a landfill in Lafayette County. These investigations determined that Lafayette County was not zoned. The local county authorities were contacted and assurances were given of no zoning, and these same authorities were apprised of appellant's plans. Appellants purchased a tract of land under a contract dated February 27, 1984. The deed to the property was executed on June 30, 1984.

Also, in 1984, efforts were made to place on the public ballot the question of whether Lafayette County should be zoned. That proposal was approved by the voters in November, 1984. Just prior to voter approval, appellants applied for the operation permit from the Department of Natural Resources.

During the period from November, 1984 until January 1, 1986, zoning regulations or ordinances were drafted. They were approved by local authorities with an effective date of January 1, 1986.[1]

Appellants expended in excess of $200,000 for land acquisition, planning, leasing of equipment, test borings, and fees to the Department of Natural Resources. Appellants also applied for an operation permit, which was not issued until June 26, 1987. That date as observed *infra* is decisive in this case. There was also evidence that prior to January 1, 1986, appellants

---

1. The ordinances adopted herein provided for nonconforming uses and thus apply both retro-

actively and prospectively. *See Missouri Rock v. Winholtz,* 614 S.W.2d 734, 739 (Mo.App.1981).

dumped nine loads of building materials on the location. Appellants stated they had dumped various materials on the location in the attempt to establish a nonconforming use prior to the effective date of the zoning regulations. They also admitted that such dumping was without a permit from the Department of Natural Resources.

The evidence suggests there was, in a sense, a "contest" between appellants and various citizens of Lafayette County as to whether the landfill would be allowed to develop and continue. Various other efforts were undertaken to resolve the matter and when they failed, this action commenced.

After a hearing on the issue, the trial court, in summary, declared that appellants had established a nonconforming use but for the lack of a permit from the Department of Natural Resources. The trial court reasoned and concluded that absence of the permit rendered appellants' actions unlawful and hence, appellants failed to establish a *lawful nonconforming use.* The trial court then enjoined appellants from further operation. This appeal followed. The foregoing is an overview of the facts, and any other facts deemed necessary to the disposition of this matter will be set forth *infra.*

Under their point (1), appellants assert the trial court erred in denying them a lawful nonconforming use because of their extended efforts relative to a search for nonzoned property, their use of experts in planning and development, their announced intentions, their "ceremonial dumping", and their expenditures in excess of $200,000, all of which established in appellants a vested right in a lawful nonconforming use effective prior to the date of January 1, 1986, which in turn was the effective date of the zoning ordinances.

It should be noted that none of the parties did anything covertly. Appellants' actions were well known to everyone, and there is nothing to even suggest any wrongdoing by any of the parties.

■ While appellants urge this court to recognize and adopt the so-called "vested rights doctrine" relative to a lawful non-

conforming use, this court is not totally without guidance in the matter. What appellants really urge is the adoption of a *vested rights doctrine to continue in the use of their land* premised upon the purchase, planning cost and intended use by them.

It is not necessary to cite the countless authorities which have declared that zoning is in contravention of one's use of the land and is restrictive as to continued or prior use of the land. These same authorities, throughout our country, have created numerous variations regarding the solving of conflict between a prior use of land and the restrictions or limitations imposed by zoning.

Admittedly, the equities would appear to lie with appellants; however, our state has long established the rule that "a vested right to a nonconforming use cannot exist unless the nonconforming use is first established." It has been held that purchase, planning and even securing a permit do not establish a lawful nonconforming use. *Pearce v. Lorson,* 393 S.W.2d 851, 854 (Mo. App.1965).

Thus, all of appellants' well-intended and professional efforts toward bringing the landfill into full operation do not, under our law, qualify as a lawful nonconforming use permitting avoidance of the restrictions imposed by the zoning ordinances. This court does not adopt appellants' suggestion of merger of a vested right developed from purchase, planning and intent into the concept of a lawful nonconforming use.

There is no evidence on this record that prior to January 1, 1986, appellants operated a landfill which by its operation would have qualified as a "lawful nonconforming use." The purchase, the cost of planning, the securing of equipment, the test boring and the continued open intent to operate the landfill, even in combination, did not establish a lawful nonconforming use in appellants.

Appellants' point (1) is ruled against them.

Under their point (2), appellants assert that the judgment of the trial court was not supported by substantial evidence and was against the weight of the evidence.

Review by this Court is governed by Rule 73.01 and the interpretation of that rule by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). This Court, contrary to appellants' contention, finds the evidence does support the judgment, the judgment was not against the weight of the evidence, and the judgment neither erroneously declared nor applied the law.

It is neither the failure of the evidence nor any error in the declaration or application of the law that is involved in this case, but rather, appellants' argument is premised upon the "merger concept" of purchase, planning, development, and intent into a lawful nonconforming use which this Court refuses to adopt.

Appellant's point (2) is ruled against them.

Under their point (3), appellants contend the trial court erred in denying them a lawful nonconforming use because retroactive application of the zoning ordinances was aimed at the landfill location, and because development was underway, the retroactive application is discriminatory, arbitrary, unreasonable, and confiscatory.

Appellants cite to this court *May Department Stores Company v. County of St. Louis*, 607 S.W.2d 857, 869 (Mo.App.1980). In that case, as disclosed in a well-written opinion, the evidence established a direct and deliberate effort by a local elected official to prohibit the construction of a so-called "discount store." This official's action arose long after the May Company had, in compliance with all local ordinances, commenced development and construction of a Venture Store.

Appellants argue that the present case comes within the *May* decision. They re-emphasize their expenditures, purchase, planning and continued intent to operate a landfill. In addition, they assert that by a combined effort of local landowners in filing an injunction action and local press coverage, Lafayette County adopted zoning because of their proposed landfill.

In the first instance, the trial court was aware of the various actions taken by other county residents and by the local press. The trial court was at liberty to receive or reject, or believe or disbelieve the evidence on this question. The ultimate conclusion that must be reached is the failure of the evidence to support appellants' contention that county-wide zoning for Lafayette County was initiated and adopted exclusively as a means to prevent appellants from proceeding so as to in turn constitute such developments as being discriminatory, arbitrary, unreasonable and confiscatory. *May* does not control the present case.

Appellants' point (3) is ruled against them.

Under their point (4), appellants assert the trial court erred in denying them a lawful nonconforming use because of their purchase of the land, their investment in excess of $210,000, and their planning and intent to develop a landfill; and thus to rule against them would constitute an unreasonable deprivation of the use of their property. Under this point, appellants again rely on the *May* decision and again, this Court finds that *May* is not controlling.

It is not absolutely clear whether appellants perceive this particular point to be a constitutional claim, but if so, it certainly is untimely and is not properly before this court. The simple fact remains that prior to January 1, 1986, appellants did not have in operation a landfill which, once the zoning ordinance became effective, constituted a lawful nonconforming use. *Pearce, supra.*

Appellants' point (4) is ruled against them.

Under their final point, point (5), appellants charge the trial court erred in refusing to admit a scrapbook of newspaper clippings. Appellants attempted to introduce several newspaper clippings related to the zoning proposal. This was objected to, and the trial court ruled that such evidence was irrelevant. Appellants then made an offer of proof to establish the

relevancy of the articles. The trial court concluded correctly that no specific article was questioned but merely that appellant, Jerry McDowell, had been asked if he had read newspaper articles about the zoning proposal and if he knew what was taking place in the county. The trial court correctly ruled that the newspaper articles were not relevant hearsay, or in other words, they were not admissible as an exception to the hearsay rule.

Appellants' point (5) is ruled against them.

As previously noted, review of this matter is under Rule 73.01. Under such review, this Court defers the credibility of witnesses to the trial courts. Although the trial court may have entered a judgment upon and for the wrong reason, this Court may affirm the judgment if it concludes the trial court reached the correct result. This is noted because of the conclusion reached by the trial court in its judgment, which declared that appellants had complied with the requirements for a lawful nonconforming use *but* the failure of appellants to have secured the appropriate permit from the Department of Natural Resources prevented them from lawful operation of the landfill. The court stated:

> Had the permit been timely issued the Court would have found the issues in favor of plaintiffs. Under present Missouri law no cases permit the legal operation of a landfill without a permit. If the operation of the landfill without a permit is not legal, there cannot be established a legal nonconforming use.

■ From the foregoing language, it must be concluded that the trial court felt that all of the planning, intention, purchase and continued intent by appellants gave rise to a lawful nonconforming use if a permit were not otherwise necessary. The evidence, however, reveals that prior to January 1, 1986, appellants were not operating a landfill. The only "dumpings" were ceremonial for the purpose of establishing a nonconforming use. Appellants admitted this. Appellants' additional undertakings relative to the development of the landfill, as commendable as they might have been, did not establish a lawful non-

conforming use. Under the facts and circumstances herein, the permit is not decisive of the issue. Assuming arguendo that appellants had secured their permit prior to January 1, 1986, and in fact did not, prior to the same date, make use of the land for a landfill, a serious question of a lawful nonconforming use would still remain. On the other hand, had appellants secured a permit, and had they operated a landfill, no dispute over a lawful nonconforming use would have arisen.

It is true that § 260.205 requires the operation of a waste facility to be under a permit issued by the Department of Natural Resources. In turn, § 260.210 prohibits such an operation without a permit. However, our law requires that before the use of property can avoid zoning restrictions and limitations, there must have existed (prior to enactment of the zoning) a lawful nonconforming use. The evidence in this case does not exclusively turn upon the failure of appellants to have a permit; but rather upon the failure of the evidence to establish an otherwise lawful nonconforming use of the land prior to January 1, 1986. The question of precisely how a permit or the lack of a permit might decide the question is therefore left to the future when and if the appropriate factual basis exists for determination of that simple question.

It is hoped that this matter can be resolved through a sensible approach between appellants and the authorities of Lafayette County in conformity with existing zoning requirements.

The judgment is affirmed upon the finding that appellants did not have a landfill in operation prior to January 1, 1986, nor did they have any vested rights which merged into a valid claim for a lawful nonconforming use which permitted avoidance of the zoning restrictions applicable to their proposal.

It is so ordered.

All concur.